1

2

3

4

5

6

7    UNITED STATES DISTRICT COURT
     FOR THE WESTERN DISTRICT OF WASHINGTON
8                      SEATTLE

9    Michael John McLeod, Peter Kamenkovich,
     Andrew Punzak, Justin Chandler, Michael
10   Alphin, Timothy Woelper, Daniel Kim, Ryan        NO.
     Ford, Jacob Williard, Ryan Klimt, Mitchell
11   Gunter, Jacob Phillips, Dakota Barney,
     Nicholas Mora, Vincent Cianfaglione, Dylan
12   Latvis, Levi Ledbetter, Daniel Spann, Jake       **COMPLAINT – CLASS ACTION**
     Bohl, Rahul Malhotra, Bradford Daniels, Scott    **FOR DAMAGES**
13   Hallman, Jared Conley, Kevin Ryan, Isaac
14   Lynn, Sam Keller, Dominic Allen, Samuel           **DEMAND FOR JURY TRIAL**
     Joines, Nicholas Crain, Christopher Calvi, J.J.,
15   L.O., L.L., K.M., S.S., G.G., G.L., A.D., G.M.,
     P.L., P.S., A.L., N.M., and K.M. individually
16   and on Behalf of All Others Similarly Situated

17
                   Plaintiffs,
18

19                      vs.

20   VALVE CORPORATION, a Washington
     corporation; CSGOLOTTO INC., a Florida
21   corporation; OPSKINS GROUP, INC., a
     Canadian corporation; JAMES VARGA,
22   A Nevada individual; PHANTOML0RD INC.,
     A Nevada Corporation; CSGO SHUFFLE, A
23   European Company; TREVOR A. MARTIN, a
     Florida individual; and THOMAS CASSELL, a
24   California individual.
25
                   Defendants.
26

COMPLAINT – CLASS ACTION FOR DAMAGES - 1

## PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT

Plaintiffs Michael John McLeod, Peter Kamenkovich, Andrew Punzak, Justin Chandler, Michael Alphin, Timothy Woelper, Daniel Kim, Ryan Ford, Jacob Williard, Ryan Klimt, Mitchell Gunter, Jacob Phillips, Dakota Barney, Nicholas Mora, Vincent Cianfaglione, Dylan Latvis, Levi Ledbetter, Daniel Spann, Jake Bohl, Rahul Malhotra, Bradford Daniels, Scott Hallman, Jared Conley, Kevin Ryan, Isaac Lynn, Sam Keller, Dominic Allen, Samuel Joines, Nicholas Crain, Christopher Calvi, J.J., individually and on behalf of his son, J.J., L.O, individually and on behalf of her minor son, L.H.,  L.L., individually and on behalf of the minor child P.L., K.M., individually and on behalf of his son, R.M., S.S., on behalf of his son, C.S., G.G., individually and on behalf of her son J.P., G.L., individually and on behalf of the minor child B.C., A.D., Individually and on behalf of the minor child A.D., G.M., individually and on behalf of his son, J.M., P.L., individually and on behalf of her son A.L., P.S., individually and on behalf of her son B.P., A.L. individually and on behalf of his son C.L., N.M., individually and on behalf of her son D.D., K.M, individually and on behalf of her son S.C., ("Plaintiffs") on behalf of themselves and all others similarly situated, by and through counsel, bring this action against Defendants Valve Corporation, CSGOLotto, Inc., OPSkins, Group, Inc., CSGOShuffle, Inc., Phantoml0rd, Inc., James Varga, Trevor A. Martin, and Thomas Cassell, ("Defendants") and state as follows:

## NATURE OF THE CASE

1.       Competitive video gaming is a multi-billion dollar business.  The industry is similar to other major sports like football, basketball and baseball, and is generally called eSports. And just like major sports, eSports has its own professional players, organized leagues and even weekly nationally televised contests on the cable station TBS[1], all sponsored by major corporate

---

[1] http://www.e-league.com/teams/

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

advertising with national brands like Buffalo Wild Wings and Arby's.[2]

2.     Just like traditional sports, eSports has become the subject of gambling and wagering on outcomes of matches between professional teams.  An estimated $2.3 billion was wagered on eSports in 2015 by more than 3 million people.[3]  Like traditional sports, the vast majority of this wagering takes place through an unregulated economy on websites mostly based outside of the United States.  However, unlike traditional sports, the people gambling on eSports are mostly teenagers.[4]  Also unlike traditional sports, the company that makes the product being wagered on is directly profiting from that wagering.[5]

3.     Defendant Valve Corporation ("Valve"), headquartered in Bellevue, Washington, owns the sports league product and is a key component in the online gaming marketplace through its Steam platform.  Valve has knowingly[6] allowed an illegal online gambling market and has been complicit in creating, sustaining and facilitating that market.  Throughout this Complaint, Steam and Valve are used interchangeably.

4.     Valve does this through its e-gaming phenomenon product Counter-Strike: Global Offensive ("CS:GO" or "Counter-Strike"). More than 380,000 people are playing Counter-Strike worldwide at any given time.[7] CS:GO is the subject of TBS weekly e-gaming matches, and is the main driver of the pro-gaming cultural phenomenon. CS:GO matches are streamed live on websites like Twitch in addition to the TBS weekly league show.

5.     Defendant Valve knowingly[8] allowed, supported, facilitated, and/or sponsored

[2] http://www.e-league.com/news/official-marketing-partners
[3] http://www.bloomberg.com/features/2016-virtual-guns-counterstrike-gambling/
[4] http://www.bloomberg.com/features/2016-virtual-guns-counterstrike-gambling/
[5] http://www.bloomberg.com/features/2016-virtual-guns-counterstrike-gambling/
[6] http://www.dailydot.com/esports/skin-betting-csgo-lawsuit-valve/
[7] http://www.bloomberg.com/features/2016-virtual-guns-counterstrike-gambling/
[8]  http://www.dailydot.com/esports/skin-betting-csgo-lawsuit-valve/

COMPLAINT – CLASS ACTION FOR DAMAGES - 3

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

illegal gambling by allowing millions of Americans to link their individual Steam accounts to third-party websites, of which there are hundreds, such as Defendants and some unnamed co-conspirators such as CSGO Lounge ("Lounge"), CSGOShuffle ("Shuffle") CSGO Diamonds ("Diamonds"), CSGOSpeed ("Speed"), CSGOCrash ("Crash"), Skin Arena ("Arena"), and OPSkins Group, Inc. ("OPSkins") and by allowing third party sites to operate their gambling transactions within the Steam marketplace.  Lounge, Shuffle, Diamonds, Speed, Crash, Lotto and Arena are collectively referred to as "Skins Gambling Websites" hereafter.  Lounge allows players to gamble on the outcome of CS:GO matches, while other Skins Gambling Websites offer casino-style games, jackpots, lotteries and other pure gambling games.

6.      Counter-Strike players can purchase CS:GO Skins ("Skins"), weapons with different textures that can be used during gameplay of Counter-Strike, through Steam, Valve's online marketplace. Skins can then easily be traded and used as collateral for bets placed on Skins Gambling Websites through linked Steam accounts. In the eSports gambling economy, skins are like casino chips that have monetary value outside the game itself because of the ability to convert them directly into cash.  Valve takes a 15% fee on the sale of each Skin (casino chip) through its marketplace.[9]

7.      Unlike traditional casino chips, however, Valve has created Skins out of thin air and can therefore control the ultimate real world value of these items through its control over supply in the marketplace.[10]  And, unlike a traditional casino, Valve does not risk anything by selling these Skins, does not allow users to directly exchange these for cash, and only makes a fee from selling these skins.

---

[9] https://support.steampowered.com/kb_article.php?ref=6088-UDXM-7214
[10] http://store.steampowered.com/news/19618/

COMPLAINT – CLASS ACTION FOR DAMAGES - 4

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

8.      Diamonds is a third-party site that allows users to exchange Skins for virtual diamonds, which then can be used to wager on variable-odds outcomes based on dice rolling. Diamonds claims on its website that it offers an innovative new way to bet Skins and that it caters to all styles of gambling. One diamond is equivalent to approximately $1 in Skins. Diamonds claims that its methods are provably fair and that diamonds earned are able to be converted to real currency. Diamonds can also be used to repurchase Skins, with the price of skins valued according to CS:GO Analysts, which are based on the economic theory of supply and demand. Moreover, Diamonds pays users to promote its website. Diamonds has no age verification process in place, which allows minor users to place illegal bets that can later be converted to real currency on other third-party websites.

9.      Lounge is a third-party site that allows users to place bets on professional Counter-Strike matches. Users simply link their Steam accounts via a sponsored Valve link on Lounge's site. Users can bet up to six Skins on any given match. Users can then collect their winning Skins and sell them for real currency on third-party sites, such as OPSkins, or place additional bets on upcoming professional Counter-Strike matches. Defendant Valve knowingly allows Lounge to provide links to Valve's Steam marketplace.  Valve knowingly[11] allows and facilitates Lounge having multiple accounts on the Valve Marketplace to facilitate the gambling transactions, and provides support and easy access for Lounge to create and manage these accounts.  Valve knows Lounge is operating a skins gambling website.  Lounge has no age verification process in place, which allows minor users to place illegal bets.    Upon information and belief, Valve has an ownership interest in and/or directly profits from the gambling of Skins on Lounge.

10.     Defendant Lotto is a third-party site that allows users — including but not limited

---

[11] http://www.dailydot.com/esports/skin-betting-csgo-lawsuit-valve/

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

to certain Plaintiffs described more specifically below — to place bets on various casino-style games, lotteries, jackpots, and other ways to gamble skins as if they were casino chips, sometimes against the site itself, and sometimes against other players.  Similar third-party sites also include Speed, Crash, and Arena. Users have to login to each of these accounts through their Steam account, trade their skins to the site's own steam accounts or steam account bots on the Steam Marketplace, and then receive skins back through the Steam Marketplace.  Defendant Valve knowingly[12] allows Speed, Crash, Lotto and Arena to have accounts on Steam's Marketplace, use Steam's software to login to users' Steam accounts, access information on Steam's servers, and provide links to Steam's marketplace.  Valve knows these websites are used for gambling of items with real world cash value and affirmatively allows this gambling.

11.     Defendant Shuffle is another third-party site that allows users — including but not limited to certain Plaintiffs described more specifically below — to gamble skins by entering them into a "provably fair" lottery jackpot in the hopes of winning all of the skins deposited. Like Lotto, users have to login to each of these accounts through their Steam account, trade their skins to the site's own steam accounts or steam account bots on the Steam Marketplace, and then receive skins back through the Steam Marketplace. Defendant Valve knowingly allows Shuffle to have accounts on Steam's marketplace, use Steam's software to login to users' Steam accounts, access information on Steam's servers, and provide links to Steam's marketplace. Valve knows this website is used for gambling of items with real world cash value and affirmatively allows this gambling.

12.     James "Phantoml0rd" Varga is an owner of Shuffle, and also a popular celebrity

---

[12] http://www.dailydot.com/esports/skin-betting-csgo-lawsuit-valve/

COMPLAINT – CLASS ACTION FOR DAMAGES - 6

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

on YouTube and other streaming services that frequently advertises his wins and losses on Shuffle in order to entice viewers to utilize the site.

13.     Defendants Trevor A. Martin and Thomas Cassell are the owners of Lotto, and they actively promote Lotto as a gambling service, including to minors.

14.     OPSkins is a third-party Skins marketplace website that allows a user to link their individual Steam account and sell Skins for real currency. Valve knowingly allowed OPSkins to provide links to Valve's Steam marketplace and allows OPSkins to have multiple accounts on the Steam Marketplace to facilitate the cashing out of Skins for real money, and provides support and easy access for OPSkins to create and manage these accounts.  Valve knows OPSkins is operating a skins gambling and cash marketplace website. OPSKins allows users to get same day cash for their Skins via PayPal. OPSkins charges a 5% fee for same day cash outs. OPSkins partners with CS:GO Analyst in order to assign value to various Skins. The value of Skins can fluctuate hourly based on the economic theory of supply and demand.

15.     In sum, Valve owns the league, sells the casino chips for a fee, and receives a piece of the income stream through foreign websites in order to maintain the charade that Valve is not promoting and profiting from online gambling, like a modern-day Captain Renault from Casablanca.[13]

16.     All of the gambling transactions take place under Valve's virtual roof and require Valve's affirmative support to continue.  Skins never actually leave Valve's servers.  Each of the third-party Skins Gambling Websites has their own accounts they use to trade Skins with players so that players can gamble on the Skins Gambling Websites, or sell Skins for cash on OPSkins and similar sites.  These Skins Gambling Websites and OPSkins have to create hundreds or even

---

[13] https://www.youtube.com/watch?v=qmywwiZth5E

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

thousands of "bot" accounts to facilitate the volume of trading with users, and Valve has affirmatively helped these companies set up and operate bot accounts, scripts, automation and other methods to allow third party sites to facilitate gambling transactions that, without Valve's direct support, these sites would not be able to do.

17.     Indeed, after undersigned counsel filed the first lawsuits against Valve, Valve took steps to shut down Skins gambling, including a public announcement and cease and desist letters to various gambling websites.  In response, many gambling websites shut down, and sites like Lounge closed its doors to U.S. players.  These lawsuits brought nothing new to Valve's attention, and therefore Valve's actions shutting Skins gambling down could have taken place at any time before Valve actually took steps to shut down Skins gambling.  Valve simply chose not to, even though its actions show it had the power to do so.

18.     Valve had the power to do so because all of the Skins gambling took place under Valve's virtual roof in the Steam marketplace.  Valve is the barkeeper who allows illegal gambling operators to set up shop in its backroom and sell chips for a fee to customers on their way in, and allows another person to cash customers out inside the bar.  Valve had the power to prevent the gambling operators from setting up shop, chose not to stop them and in fact gave them the keys to the backroom.

19.     Valve has materially benefited directly and indirectly from this: the value of Skins has gone up because of the gambling marketplace Valve created, sustains and supports, and Valve has directly profited from the sale of Skins, in addition to third-party business ventures such as a league based on CS:GO.  That most of the people in the CS:GO gambling economy are teenagers and/or under 21 makes Valve's and the other Defendants' and unnamed co-conspirators' actions even more unconscionable.

COMPLAINT – CLASS ACTION FOR DAMAGES - 8

20.     The Plaintiffs in this case, from California, Connecticut, Colorado, Florida, Georgia, Illinois, Kentucky, Ohio, Indiana, Louisiana, Massachusetts, Michigan, Minnesota, Missouri, North Carolina, North Dakota, Nebraska, New Jersey, New York, Nevada, Oklahoma, Oregon, Pennsylvania, South Carolina, Tennessee, Virginia, and Washington, bring this case on behalf of all consumers and parents of minor children nationwide against Defendants for their unconscionable, illegal, concerted online gambling racket targeted at teenagers and kids.

**PARTIES, JURISDICTION AND VENUE**

21.     Defendant Valve is a Washington Corporation headquartered at 10900 NE 4th St., Suite 500, Bellevue, Washington 98004. Valve is authorized to conduct business and does conduct business throughout the United States.  Valve is the publisher and developer of the videogame Counter Strike: Global Offensive.

22.     Defendant Lotto is a Florida corporation, headquartered at 6511 Vineland Drive, Orlando, Florida 32819, and owned in part by Defendants Trevor A. Martin and Thomas Cassell.

23.     Defendant OPSkins Group, Inc., is a Canadian corporation having its principal place of business at 301 Omer-Deserres, Suite 101, Blainville, Quebec, J7C 0K2, Canada.

24.     Defendant Shuffle is a Nevada corporation, registered and headquartered under the name Phantoml0rd, Inc., at 123 West NYE Ln., Suite 129, Carson City, NV 89706, and owned in part by Defendant James Varga.

25.     Defendant James "Phantoml0rd" Varga ("Varga") is a Nevada citizen and resident of Las Vegas, Nevada, who is also the co-owner, President, Secretary, Treasurer, and Director, of Phantoml0rd, Inc. and Shuffle.  For purposes of this Complaint, "Varga" means Varga individually and Phantoml0rd, Inc.

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

26.     Defendant Trevor A. Martin ("Martin") is a Florida citizen and a resident of Orlando, Florida, who also is co-owner, President and Registered Agent for Lotto.

27.     Defendant Thomas Cassell ("Cassell") is a California citizen who resides in Los Angeles, California, who also is co-owner and Vice President of Lotto.

28.     Plaintiff Michael John McLeod is an adult resident and citizen of Fairfield County, Connecticut and a customer of Valve since 2014. He is an on-line player of CS:GO and has entered into wagering as described infra. Specifically, Plaintiff purchased CS:GO from Defendant, purchased numerous Skins, gambled them and lost money, and knew that he could cash out the value of the Skins for real money prior to losing them while gambling.

29.     Plaintiff Peter Kamenkovich is an adult resident and citizen of Miami, located in Dade County, Florida.  He is an on-line player of CS:GO and has entered into wagering as described *infra*. Specifically, Kamenkovich purchased CS:GO from Defendant, purchased numerous Skins, gambled them and lost money, and knew that he could cash out the value of the Skins for real money prior to losing them while gambling. Plaintiff gambled skins on third-party sites including CSGOLotto, CSGOSpeed and CSGODiamonds.

30.     Plaintiff Andrew Punzak is an adult resident and citizen of St. Petersburg, located in Pinellas County, Florida.  He is an on-line player of CS:GO and has entered into wagering as described *infra*. Specifically, Punzak purchased CS:GO from Defendant, purchased numerous Skins, gambled them and lost money, and knew that he could cash out the value of the Skins for real money prior to losing them while gambling. Plaintiff gambled skins on third-party sites including CSGOLotto, CSGODiamonds, and CSGOSpeed.

31.     Plaintiff Justin Chandler is an adult resident and citizen of Winter Haven, located in Polk County, Florida.  He is an on-line player of CS:GO and has entered into wagering as

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

described *infra*. Specifically, Chandler purchased CS:GO from Defendant, purchased numerous Skins, gambled them and lost money, and knew that he could cash out the value of the Skins for real money prior to losing them while gambling. Plaintiff gambled skins on third-party sites including CSGOLotto and CSGOWild.

32.     Plaintiff Michael Allphin is an adult resident and citizen of Walnut Creek, located in Contra Costa County, California.  He is an on-line player of CS:GO and has entered into wagering as described *infra*. Specifically, Allphin purchased CS:GO from Defendant two years ago, purchased numerous Skins, gambled them and lost money, and knew that he could cash out the value of the Skins for real money prior to losing them while gambling. Plaintiff gambled skins on third-party sites including CSGOWild and CSGOLotto while also using OPskins.

33.     Plaintiff Timothy Woelper is an adult resident and citizen of St. Augustine, located in St. Johns County, Florida.  While now an adult, Woelper began using Steam while still a minor. He is an on-line player of CS:GO and has entered into wagering as described *infra*. Specifically, Woelper purchased CS:GO from Defendant, purchased numerous Skins, gambled them and lost money, and knew that he could cash out the value of the Skins for real money prior to losing them while gambling. Plaintiff gambled skins on third-party sites including CSGOLotto, CSGOLounge, CSGODiamonds, CSGOPoor, CSGORumble, CSGOJackpot, CSGOOrage, and SkinArena.

34.     Plaintiff Daniel Kim is an adult resident and citizen of Peachtree City, located in Fayette County, Georgia.  He is an on-line player of CS:GO and has entered into wagering as described *infra*. Specifically, Kim purchased CS:GO from Defendant, purchased numerous Skins, gambled them and lost money, and knew that he could cash out the value of the Skins for

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

real money prior to losing them while gambling. Plaintiff gambled skins on third-party sites including CSGOWild, CSGOBig, CSGOJackpot, and CSGODiamonds.

35.     Plaintiff Ryan Ford is an adult resident and citizen of Sugar Grove, located in Kane County, Illinois.  He is an on-line player of CS:GO and has entered into wagering as described *infra*. Specifically, Ford purchased CS:GO from Defendant, purchased numerous Skins, gambled them and lost money, and knew that he could cash out the value of the Skins for real money prior to losing them while gambling. Plaintiff gambled skins on third-party sites including CSGOLotto and CSGOWild while utilizing OPskins.

36.     Plaintiff Jacob Willard is an adult resident and citizen of Louisville, located in Jefferson County, Kentucky.  While now an adult, Willard began using Steam while still a minor. He is an on-line player of CS:GO and has entered into wagering as described *infra*. Specifically, Willard purchased CS:GO from Defendant, purchased numerous Skins, gambled them and lost money, and knew that he could cash out the value of the Skins for real money prior to losing them while gambling. Plaintiff gambled skins on third-party sites including CSGOWild and CSGOLottojules.

37.     Plaintiff Ryan Klimt is an adult resident and citizen of Lafayette, located in Tippecanoe County, Indiana.  He is an on-line player of CS:GO and has entered into wagering as described *infra*. Specifically, Klimt purchased CS:GO from Defendant, purchased numerous Skins, gambled them and lost money, and knew that he could cash out the value of the Skins for real money prior to losing them while gambling. Plaintiff gambled skins on third-party sites including CSGOLotto and CSGOBig.

38.     Plaintiff Mitchell Gunter is an adult resident and citizen of Lafayette, located in Lafayette Parish, Louisiana. Gunter began using Steam while still a minor, and has only recently

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

turned 18.  He is an on-line player of CS:GO and has entered into wagering as described *infra*. Specifically, Gunter purchased CS:GO from Defendant, purchased numerous Skins, gambled them and lost money, and knew that he could cash out the value of the Skins for real money prior to losing them while gambling. Plaintiff gambled skins on third-party sites including CSGOLotto, CSGOWild, and CSGOShuffle.

39.     Plaintiff Jacob Phillips is an adult resident and citizen of Mount Pleasant, located in Isabella County, Michigan.  He is an on-line player of CS:GO and has entered into wagering as described *infra*. Phillips began using Steam while still a minor, and has only recently turned 18. Specifically, Phillips purchased CS:GO from Defendant, purchased numerous Skins, gambled them and lost money, and knew that he could cash out the value of the Skins for real money prior to losing them while gambling. Plaintiff gambled skins on third-party sites including CSGOBig, CSGOLotto, CSGOJackpot, CSGOLounge, and Skinarena.

40.     Plaintiff Dakota Barney is an adult resident and citizen of Wrenshaw, located in Carlton County, Minnesota.  Barney began using Steam while still a minor, and has only recently turned 18. He is an on-line player of CS:GO and has entered into wagering as described *infra*. Specifically, Barney purchased CS:GO from Defendant, purchased numerous Skins, gambled them and lost money, and knew that he could cash out the value of the Skins for real money prior to losing them while gambling. Plaintiff gambled skins on CSGOLotto.

41.     Plaintiff Nicholas Mora is an adult resident and citizen of Saint Peters, located in St. Charles County, Missouri. Mora began using Steam while still a minor, and has only recently turned 18.  He is an on-line player of CS:GO and has entered into wagering as described *infra*. Specifically, Mora purchased CS:GO from Defendant, purchased numerous Skins, gambled them and lost money, and knew that he could cash out the value of the Skins for real money prior to

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

losing them while gambling. Plaintiff gambled skins on third-party sites including CSGOLotto, CSGOWild, CSGOStakes, CSGOBig, CSGODouble, CSGOPolygon, and Crimson.gg.

42.     Plaintiff Vincent Cianfaglione is an adult resident and citizen of Concord, located in Cabarrus County, North Carolina.  He is an on-line player of CS:GO and has entered into wagering as described *infra*. Specifically, Cianfaglione purchased CS:GO from Defendant, purchased numerous Skins, gambled them and lost money, and knew that he could cash out the value of the Skins for real money prior to losing them while gambling. Plaintiff gambled skins on third-party sites including CSGOLotto and CSGOBig.

43.     Plaintiff Dylan Latvis is an adult resident and citizen of Minot, located in Ward County, North Dakota. Latvis began using CSGO while still a minor, and has only recently turned 18.  He is an on-line player of CS:GO and has entered into wagering as described *infra*. Specifically, Latvis purchased CS:GO from Defendant, purchased numerous Skins, gambled them and lost money, and knew that he could cash out the value of the Skins for real money prior to losing them while gambling. Plaintiff gambled skins on third-party sites including CSGOWild, CSGOLotto, CSGOCrash, and CSGODiamonds.

44.     Plaintiff Levi Ledbetter is an adult resident and citizen of Lincoln, located in Lancaster County, Nebraska.  He is an on-line player of CS:GO and has entered into wagering as described *infra*. Specifically, Ledbetter purchased CS:GO from Defendant, purchased numerous Skins, gambled them and lost money, and knew that he could cash out the value of the Skins for real money prior to losing them while gambling. Plaintiff gambled skins on third-party sites including CSGOWild, CSGODouble, CSGODiamonds, CSGOLotto, CSGOCrash, and CSGORoll.

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 ● FAX 206.682.2992

45.     Plaintiff Daniel Spann is an adult resident and citizen of New York, New Jersey. He is an on-line player of CS:GO and has entered into wagering as described *infra*. Specifically, Spann purchased CS:GO from Defendant, purchased numerous Skins, gambled them and lost money, and knew that he could cash out the value of the Skins for real money prior to losing them while gambling. Plaintiff gambled skins on third-party sites including CSGOLotto, CSGOWild, and utilized OPskins as well.

46.     Plaintiff Jake Bohl is an adult resident and citizen of Henderson, located in Clark County, Nevada.  While now an adult, Bohl began using Steam while still a minor. He is an on-line player of CS:GO and has entered into wagering as described *infra*. Specifically, Bohl purchased CS:GO from Defendant, purchased numerous Skins, gambled them and lost money, and knew that he could cash out the value of the Skins for real money prior to losing them while gambling. Plaintiff gambled skins on third-party sites including CSGOLotto and CSGOShuffle.

47.     Plaintiff Rahul Malhotra is an adult resident and citizen of Jericho, located in Nassau County, New York.  He is an on-line player of CS:GO and has entered into wagering as described *infra*. Specifically, Malhotra purchased CS:GO from Defendant, purchased numerous Skins, gambled them and lost money, and knew that he could cash out the value of the Skins for real money prior to losing them while gambling. Plaintiff gambled skins on third-party sites including CSGOLotto, CSGOStrike, and CSGOWild.

48.     Plaintiff Bradford Daniels is an adult resident and citizen of Shattuk, located in Ellis County, Oklahoma.  He is an on-line player of CS:GO and has entered into wagering as described *infra*. Specifically, Daniels purchased CS:GO from Defendant, purchased numerous Skins, gambled them and lost money, and knew that he could cash out the value of the Skins for real money prior to losing them while gambling. Plaintiff gambled skins on CSGOWild.

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

49.     Plaintiff Scott Hallman is an adult resident and citizen of Aston, located in Delaware County, Pennsylvania.  He is an on-line player of CS:GO and has entered into wagering as described *infra*. Specifically, Hallman purchased CS:GO from Defendant, purchased numerous Skins, gambled them and lost money, and knew that he could cash out the value of the Skins for real money prior to losing them while gambling. Plaintiff gambled skins on third-party sites including CSGOLotto and CSGOWild.

50.     Plaintiff Jared Conley is an adult resident and citizen of Pittsburgh, located in Allegheny County, Pennsylvania.  While now an adult, Conley began using Steam while still a minor. He is an on-line player of CS:GO and has entered into wagering as described *infra*. Specifically, Conley purchased CS:GO from Defendant, purchased numerous Skins, gambled them and lost money, and knew that he could cash out the value of the Skins for real money prior to losing them while gambling. Plaintiff gambled skins on third-party sites including CSGOEgg, CSGOBazar, and R2pleasant while using OPSkins.

51.     Plaintiff Kevin Ryan is an adult resident and citizen of Greenville, located in Greenville County, South Carolina.  Ryan began using Steam while still a minor, and has only recently turned 18. He is an on-line player of CS:GO and has entered into wagering as described *infra*. Specifically, Ryan purchased CS:GO from Defendant, purchased numerous Skins, gambled them and lost money, and knew that he could cash out the value of the Skins for real money prior to losing them while gambling. Plaintiff gambled skins on CSGOLotto and utilized OPskins.

52.     Plaintiff Isaac Lynn is an adult resident and citizen of Stantonville, located in McNairy County, Tennessee.  He is an on-line player of CS:GO and has entered into wagering as described *infra*. Specifically, Lynn purchased CS:GO from Defendant, purchased numerous

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

Skins, gambled them and lost money, and knew that he could cash out the value of the Skins for real money prior to losing them while gambling. Plaintiff gambled skins on CSGOLotto.

53.     Plaintiff Sam Keller is an adult resident and citizen of Yorktown, located in York County, Virginia. Keller began using Steam while still a minor, and has only recently turned 18. He is an on-line player of CS:GO and has entered into wagering as described *infra*. Specifically, Keller purchased CS:GO from Defendant, purchased numerous Skins, gambled them and lost money, and knew that he could cash out the value of the Skins for real money prior to losing them while gambling. Plaintiff gambled skins on third-party sites including CSGOLotto, CSGOJackpot, and CSGODiamonds.

54.     Plaintiff Dominic Allen is an adult resident and citizen of Seattle, located in King County, Washington.  Allen began using Steam while still a minor, and has only recently turned 18. He is an on-line player of CS:GO and has entered into wagering as described *infra*. Specifically, Allen purchased CS:GO from Defendant, purchased numerous Skins, gambled them and lost money, and knew that he could cash out the value of the Skins for real money prior to losing them while gambling. Plaintiff gambled skins on CSGOLotto.

55.     Plaintiff Samuel Joines is an adult resident and citizen of Peachtree City, located in Fayette County, Georgia.  He is an on-line player of CS:GO and has entered into wagering as described *infra*. Specifically, Joines purchased CS:GO from Defendant, purchased numerous Skins, gambled them and lost money, and knew that he could cash out the value of the Skins for real money prior to losing them while gambling. Plaintiff gambled skins on third-party sites including CSGOLotto, CSGOBig, CSGOWild, and CSGODouble while utilizing OPskins.

56.     Plaintiff Nicholas Crain is an adult resident and citizen of Puyallup, located in Pierce County, Washington.  While now an adult, Crain began using Steam while still a minor.

COMPLAINT – CLASS ACTION FOR DAMAGES - 17

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

He is an on-line player of CS:GO and has entered into wagering as described *infra*. Specifically, Crain purchased CS:GO from Defendant, purchased numerous Skins, gambled them and lost money, and knew that he could cash out the value of the Skins for real money prior to losing them while gambling. Plaintiff gambled skins on third-party sites including CSGODouble, CSGODiamonds, CSGOLotto, and CSGOWild.

57.     Plaintiff Christopher Calvi is an adult resident and citizen of Ridgecrest, located in Kern County, California.  He is an on-line player of CS:GO and has entered into wagering as described *infra*. Specifically, Calvi purchased CS:GO from Defendant, purchased numerous Skins, gambled them and lost money, and knew that he could cash out the value of the Skins for real money prior to losing them while gambling. Plaintiff gambled skins on third-party sites including CSGOLotto, CSGOShuffle, CSGOWild, CSGODiamonds, while utilizing OPSkins as well.

58.     Plaintiff C.B. is the guardian of the minor child N.B., who is a resident and citizen of Broward County, Florida. N.B. has been a customer of Valve since 2014. He is an on-line player of CS:GO and has entered into wagering as described infra. Specifically, Plaintiff's minor son purchased CS:GOfrom Defendant, purchased numerous Skins, gambled them and lost money, and knew that he could cash out the value of the Skins for real money prior to losing them while gambling. N.B. gambled skins on CSGOLotto and CSGODiamonds, while utilizing OPSkins as well.

59.     Plaintiff J.J. is the guardian of the minor child J.J., who is a resident and citizen of Aurora, located in Arapahoe County, Colorado. J.J. is an on-line player of CS:GO and has entered into wagering as described *infra*. Specifically, J.J. purchased CS:GO from Defendant, purchased numerous skins, gambled them and lost money, and knew that he could cash out the

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

value of the Skins for real money prior to losing them while gambling. Plaintiff gambled skins on CSGODouble, CSGOBig, and CSGOPolygon.

60.     Plaintiff L.O. is the guardian of the minor child L.H. who is a resident and citizen of Fairfax Station, located in Fairfax County, Virginia. L.H.. is an on-line player of CS:GO and has entered into wagering as described *infra*. Specifically, L.H. purchased CS:GO from Defendant, purchased numerous skins, gambled them and lost money, and knew that he could cash out the value of the Skins for real money prior to losing them while gambling. Plaintiff gambled skins on  CSGOLotto.

61.     Plaintiff L.L. is the guardian of the minor child P.L., who is a resident and citizen of Granby, located in Newton County, Missouri. P.L. is an on-line player of CS:GO and has entered into wagering as described *infra*. Specifically, P.L. purchased CS:GO from Defendant, purchased numerous skins, gambled them and lost money, and knew that he could cash out the value of the Skins for real money prior to losing them while gambling. Plaintiff gambled skins on third-party sites including CSGOLotto, CSGOJackpot, CSGOWild, and CSGOShuffle.

62.     Plaintiff K.M. is the guardian of the minor child R.M., who is a resident and citizen of Fairfield, located in Fairfield County, Connecticut. R.M. is an on-line player of CS:GO and has entered into wagering as described *infra*. Specifically, R.M. purchased CS:GO from Defendant, purchased numerous skins, gambled them and lost money, and knew that he could cash out the value of the Skins for real money prior to losing them while gambling. Plaintiff gambled skins on third-party sites including CSGOLotto, CSGOWild, CSGODouble, CSGOPolygon, CSGOMassive, CSGOBig, and CSGOCrash.

63.     Plaintiff S.S. is the guardian of the minor child C.S., who is a resident and citizen of Shrewbury, located in Worcester County, Massachusetts. C.S. is an on-line player of CS:GO

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

and has entered into wagering as described *infra*. Specifically, C.S. purchased CS:GO from Defendant, purchased numerous skins, gambled them and lost money, and knew that he could cash out the value of the Skins for real money prior to losing them while gambling. Plaintiff gambled skins on third-party sites including CSGODouble and CSGOSweep.

64.     Plaintiff G.G. is the guardian of the minor child J.P., who is a resident and citizen of Naperville, located in DuPage County, Illinois. J.P. is an on-line player of CS:GO and has entered into wagering as described *infra*. Specifically, J.P. purchased CS:GO from Defendant, purchased numerous skins, gambled them and lost money, and knew that he could cash out the value of the Skins for real money prior to losing them while gambling. Plaintiff gambled skins on third-party sites including CSGOLotto, CSGOWild, CSGODouble, CSGOPolygon, CSGOMassive, CSGOBig, and CSGOCrash.

65.     Plaintiff G.L. is the guardian of the minor child B.C., who is a resident and citizen of Homestead, located in Miami-Dade County, Florida. B.C. is an on-line player of CS:GO and has entered into wagering as described *infra*. Specifically, B.C. purchased CS:GO from Defendant, purchased numerous skins, gambled them and lost money, and knew that he could cash out the value of the Skins for real money prior to losing them while gambling. Plaintiff gambled skins on third-party sites including CSGOLotto, CSGOShuffle, CSGOWild, and utilized OPSkins.

66.     Plaintiff A.D. is the guardian of the minor child A.D., who is a resident and citizen of Coral Springs, located in Broward County, Florida. A.D. is an on-line player of CS:GO and has entered into wagering as described *infra*. Specifically, A.D. purchased CS:GO from Defendant, purchased numerous skins, gambled them and lost money, and knew that he could cash out the value of the Skins for real money prior to losing them while gambling. Plaintiff

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

gambled skins on CSGOLotto, CSGOWild, and CSGOBig.

67.     Plaintiff G.M. is the guardian of the minor child J.M., who is a resident and citizen of Columbus, located in Franklin County, Ohio. J.M. is an on-line player of CS:GO and has entered into wagering as described *infra*. Specifically, J.M. purchased CS:GO from Defendant, purchased numerous skins, gambled them and lost money, and knew that he could cash out the value of the Skins for real money prior to losing them while gambling. Plaintiff gambled skins on CSGOLounge, CSGOLotto, CSGOWild, Skinarena, CSGODouble, CSGOPoor, CSGOShuffle, and, CSGORaffling.

68.     Plaintiff P.L. is the guardian of the minor child A.L., who is a resident and citizen of Albany, located in Albany County, New York. A.L. is an on-line player of CS:GO and has entered into wagering as described *infra*. Specifically, A.L. purchased CS:GO from Defendant, purchased numerous skins, gambled them and lost money, and knew that he could cash out the value of the Skins for real money prior to losing them while gambling. Plaintiff gambled skins on CSGOShuffle and CSGOLotto.

69.     Plaintiff P.S. is the guardian of the minor child B.P., who is a resident and citizen of Parker, located in Douglas County, Colorado. B.P. is an on-line player of CS:GO and has entered into wagering as described *infra*. Specifically, B.P. purchased CS:GO from Defendant, purchased numerous skins, gambled them and lost money, and knew that he could cash out the value of the Skins for real money prior to losing them while gambling. Plaintiff gambled skins on CSGOBig and CSGOLotto.

70.     Plaintiff A.L. is the guardian of the minor child C.L., who is a resident and citizen of Albany, located in Linn County, Oregon. C.L. is an on-line player of CS:GO and has entered into wagering as described *infra*. Specifically, C.L. purchased CS:GO from Defendant,

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

purchased numerous skins, gambled them and lost money, and knew that he could cash out the value of the Skins for real money prior to losing them while gambling. Plaintiff gambled skins on CSGOBig, CSGOLotto, CSGOCrash, and CSGODouble.

71.     Plaintiff N.M. is the guardian of the minor child D.D. who is a resident and citizen of St. Clair Shores, located in Macomb County, Michigan. D.D. is an on-line player of CS:GO and has entered into wagering as described *infra*. Specifically, D.D. purchased CS:GO from Defendant, purchased numerous skins, gambled them and lost money, and knew that he could cash out the value of the Skins for real money prior to losing them while gambling. Plaintiff gambled skins on CSGODouble and CSGOWild.

72.     Plaintiff K.M. is the guardian of the minor child S.C. who is a resident and citizen of Los Angeles, located in Los Angeles County, California. S.C. is an on-line player of CS:GO and has entered into wagering as described *infra*. Specifically, S.C. purchased CS:GO from defendant, purchased numerous skins, gambled them and lost money, and knew that he could cash out the value of the skins for real money prior to losing them while gambling. Plaintiff gambled skins on CSGOLotto, CSGOJackpot, CSGODouble, and CSGOPolygon.

73.     This Court also has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 because one of Plaintiffs' civil claims arises under the Constitution, laws or treaties of the United States, specifically, violation of 18 U.S.C. § 1962.

74.     This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 because the state law claims are so closely related to the claims in which the Court has original jurisdiction that they form part of the same case or controversy.

75.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 as a substantial portion of the events and conduct giving rise to the claims occurred in the Western District of

COMPLAINT – CLASS ACTION FOR DAMAGES - 22

Washington, and all Defendants have submitted to jurisdiction here by creating online accounts and maintaining significant contact with Defendant Valve, which is located in this District.

## FACTUAL BACKGROUND

### A.    The Rise of E-Sports and CS:GO

76.    Valve has manufactured video games for nearly 20 years.  In 1999, it introduced the Counter-Strike series, culminating in CS:GO's release in 2012.

77.    CS:GO was one of many similar video games involving players who play as either terrorists or counter-terrorists.  Because the player views the video game through the eyes of a character and shoots guns, it is known as a "first person shooter" game.  When CS:GO was released in 2012, the market was flooded with such franchises as Call of Duty, Halo and Battlefield.

78.    Seeking to differentiate itself, CS:GO introduced Skins.  The announcement made was August 14, 2013 through a post on its website titled "The Arms Deal Update" ("Skins Announcement").[14]

79.    The Skins Announcement told players that they could "experience all the illicit thrills of black market weapons trafficking without any of the hanging around in darkened warehouses getting knifed to death."  Specifically, "[t]he Arms Deal Update lets you collect, buy, sell and trade over 100 all-new decorated weapons that you can equip in-game."

80.    The Skins Announcement discussed how the new marketplace would work: "You can start collecting decorated weapons via timed weapon drops just by playing CS:GO on official and community servers. You can also get them by opening dropped weapon cases with the appropriate key, or by trading with other players through Steam's Trading interface.

---

[14] http://blog.counter-strike.net/index.php/2013/08/7425/

COMPLAINT – CLASS ACTION FOR DAMAGES - 23

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

Additionally, any decorated weapons you've found, bought or traded can be sold on the Steam Marketplace." Players have to pay Valve for a key to open a weapons drop box, which could contain Skins worth less or more than the cost of the key.

81.     Valve directed players to Reddit (the "front page of the internet" forum website with numerous sub-forums for specific interests), the Steam Community Discussions and the CS:GO Forums on steampowered.com for more information and to discuss Skins.

82.     Steam and steampowered.com are wholly owned properties of Valve. Steam operates as a wholly enclosed ecosystem wherein players can play games, communicate with other players, initiate trades with other players, list items for sale, buy games, buy items, deposit money into their "Steam Wallet," participate in forum discussions, and communicate with Valve directly.

83.     When items are bought and sold on the Steam Marketplace, Valve Steam takes a 5% cut on all total sales, and an additional percentage depending on the game the item is related to. If a sale is related to CS:GO, Steam takes an additional 10%, resulting in a 15% fee in all marketplace sales related to CS:GO.

84.     The creation of Skins was a deliberate attempt by Valve to increase its sales and profits by adding an element of gambling and market economies to its products.  And it worked: as a result of the gambling ecosystem, explained in depth below, that grew up around CS:GO Skins, the number of players on CS:GO increased more than 1,500 percent, and CS:GO became the subject of televised and monetized eSports.  Despite its slow initial sales, Valve has now sold more than 21 million copies of CS:GO, earned more than $567 million in total revenue from sales of CS:GO alone, and earned a percentage of gambling proceeds on CS:GO through various

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

websites and third parties.[15]

85.     This was a deliberate strategy on Valve's part.  One of its employees explained at a developer's conference in 2014 that the company determined that the "best way to get players deeply engaged in games…was to give away virtual items of random value and encourage a robust market to trade them."  That employee was quoted as saying: "This is not an accident.  This is by design.  We see more blogs popping up and more and more emails from our players saying, 'I'm not really sure what happened but I've been playing DotA for the last week or two, and I made $100 selling these items that I got.'  This is hugely successful for us."[16] "DotA" refers to Defense of the Ancients, another Valve game with a similar Skin gambling ecosystem like CS:GO.

86.     Valve went so far as to hire an internationally renowned economist to help it develop currencies and cross-platform economies.[17]

87.     The results were stunning: in addition to TBS broadcasting video games on television, eSports matches have sold out arenas, been watched by tens of millions of viewers online and have resulted in a multi-billion dollar global gambling marketplace.

88.     There is an increase in betting — and therefore the purchase of Skins on Valve's website — during televised eSports.  Since TBS debuted CS:GO matches, as many as 3.38 million skins were bet on matches on Lounge.  The average value of Skins traded across various platforms was $9.75.  The total "handle" — that is, dollars wagered — is more than $33 million.  The matches televised in TBS result in the highest amount of wagering.[18]

89.     Valve receives a direct financial benefit from televised CS:GO matches.

---

[15] http://www.bloomberg.com/features/2016-virtual-guns-counterstrike-gambling/
[16] http://www.bloomberg.com/features/2016-virtual-guns-counterstrike-gambling/
[17] http://www.bloomberg.com/features/2016-virtual-guns-counterstrike-gambling/
[18] http://www.esportsbettingreport.com/eleague-handle-for-skin-betting/

COMPLAINT – CLASS ACTION FOR DAMAGES - 25

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

90.     The online gambling ecosystem around CS:GO is illegal in the United States.

91.     Valve had no license, permission or legal authority to create, sustain, profit from or otherwise support an online gambling platform, and, as discussed more in depth below, Valve's affirmative actions both created this online gambling system and allow it to continue.

**B.     The Mechanics of Gambling on CS:GO And How Valve Has Created, Facilitated, Fostered and Affirmatively Allowed Skins Gambling**

92.     Valve sells Skins through its website and Steam platform.  Valve takes a 15% fee on all CS:GO Skins sold through its website or sold on its Marketplace.

93.     These Skins can be won, bought, trade, sold, and otherwise have in-game value through Steam's marketplace and the CS:GO game itself.  It also sells versions of Skins called Knives using the same system.[19]

94.     Unlike apps and other computer games with such in-game purchases, Valve has created and currently supports a secondary marketplace where these in-game purchases can be gambled and cashed out.

95.     Skins, in gambling terms, can be seen as casino chips.

96.     CS:GO matches happen all day every day, and at any given time there are as many as 380,000 people playing CS:GO online.[20]

97.     In addition to the TBS-televised games, there are online broadcasts on websites such as Twitch.  In any given match, viewers may pick which team they think is going to win. The people who bet on the outcome of the eSports match do not play in it and have no control over the outcome.

98.     "People buy skins for cash, then use the skins to place online bets on pro CS:GO

---

[19] http://www.pcgamer.com/how-400-virtual-knives-saved-counter-strike/2/
[20] http://www.bloomberg.com/features/2016-virtual-guns-counterstrike-gambling/

COMPLAINT – CLASS ACTION FOR DAMAGES - 26

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

matches.  Because there's a liquid market to convert each gun or knife back into cash, laying a bet in skins is essentially the same as betting with real money."[21]

99.     Players must link their Steam account to third party websites such as OPSkins and Skins Gambling Websites in order to be able to gamble or cash out their Skins on the third-party sites.

100.    OPSkins and Skins Gambling Websites such as Lotto have their own accounts on the Steam marketplace that are used to facilitate transfers, sales and gambling.  That is, if a user logs into a Skins Gambling Website and wants to gamble, technically they transfer their skins to the Skins Gambling Website's own Steam account, or one of that Skins Gambling Website's numerous "bot" accounts.  If the user wins, the Skins Gambling Website transfers Skins back to the user's Steam account.  OPSkins does the same and has numerous Steam accounts of its own to facilitate users turning Skins into real cash.

101.    These third party websites require permission and cooperation from Valve in order to access a player's account on Steam, and Valve specifically allows players to transfer skins to third-party accounts on the Steam Marketplace. Valve allows this knowing exactly what these sites' accounts are, what users are doing, and is affirmatively supporting these transactions, and receiving income from transactions on these sites.  "The gambling sites run on software built by Valve, and whenever CS:GO skins are sold, the game maker collects 15 percent of the money."[22]

102.    Upon information and belief, Valve has an ownership interest, partnership or otherwise a direct business relationship with Lounge.

---

[21] http://www.bloomberg.com/features/2016-virtual-guns-counterstrike-gambling/
[22] http://www.bloomberg.com/features/2016-virtual-guns-counterstrike-gambling/

COMPLAINT – CLASS ACTION FOR DAMAGES - 27

103.   Valve has helped develop the gambling economy and third-party sites such as Lotto and has worked with Lotto and other third-party sites to continue operations.   Valve affirmatively facilitates the gambling through allowing third-parties to create thousands of accounts through automation, "whitelists" or other shortcuts, and knowingly allows these steps of the gambling process to occur within the Steam marketplace.

104.   For instance, in January 2015, Valve instituted a new security measure that required users to prove they were real human beings known as a "Captcha" tool.   Valve did this in order to "prevent malware on users' machines making trades on their behalf."   However, Valve specifically "excluded a few of the existing third-party trading services from this requirement so they can continue to function."[23]   Those third-party trading services are sites like OPSkins and the Skins Gambling Websites that use hundreds and/or thousands of Steam accounts to facilitate gambling.[24]

105.   Valve is well aware of the Skins gambling that goes on, is well aware that Skins have real world cash value, which has increased their popularity and value, and actively encourages and facilitates Skins gambling.

106.   Valve is aware that these third-party gambling sites can and do cheat CS:GO players betting skins.   An anonymous Valve employee told a reporter that "I don't think the rigged roulette sites in Russia give two f--ks" about the original lawsuit filed against Valve that mentions third-party websites based overseas.[25]   The full context of that quote:

---

[23] http://steamcommunity.com/groups/tradingcards/discussions/1/622954023422884592/
[24] https://www.reddit.com/r/Steam/comments/3lvvao/how_safe_are_third_party_websites_that_allow_you/;
http://steamcommunity.com/id/drunkenf00l/
[25] http://www.dailydot.com/esports/skin-betting-csgo-lawsuit-valve/

COMPLAINT – CLASS ACTION FOR DAMAGES - 28

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

**The Daily Dot**

The alleged co-conspirators in the suit, skin gambling sites CSGO Lounge, Diamonds, and OPSkins, will also likely be unaffected.

Ward acknowledged that even reaching these sites would be difficult. "Who are these sites?" he said. "We know Lounge is a real business in Poland, but for Diamonds, we have no idea ... this can be a problem that prevents offshore-gambling suits from going forward."

The Valve employee added: "I don't think the rigged roulette sites in Russia give two fucks."

Valve did not respond to requests for comment on this article.

107.    In addition to anonymous employees bashing lawsuits to reporters and admitting Valve is aware that rigged third-party sites are taking money from Valve's teenage customers, Valve has publicly discussed gambling on CS:GO in other forums.  For instance, in order to stem the increased hacking, fraud and other harms to consumers that had arisen out of Skins gambling in 2015, Valve introduced new security measures.   Valve announced these measures on December 9, 2015, in a post called "Security and Trading" on the Steam marketplace website.[26]

108.    In this post, Valve wrote: "Account theft has been around since Steam began, but with the introduction of Steam Trading, the problem has increased twenty-fold as the number one complaint from our users….  This was an unacceptable status quo and we needed to address

---

[26] http://store.steampowered.com/news/19618/

COMPLAINT – CLASS ACTION FOR DAMAGES - 29

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

it. In revisiting our strategy to stop it, we found two things of note. First, enough money now moves around the system that stealing virtual Steam goods has become a real business for skilled hackers. Second, practically every active Steam account is now involved in the economy, via items or trading cards, with enough value to be worth a hacker's time. Essentially all Steam accounts are now targets."[27]

109.    Valve admitted that it knew Skins had real world cash value: "If hackers couldn't move the stolen goods off the hacked account, then they couldn't sell them for real money, and that would remove the primary incentive to steal the account."[28]

110.    Valve thus knows and has admitted that its in-game Skins have real world monetary and cash value through third-party websites it knowingly supports and assists on the Steam Marketplace.

111.    Valve could have stopped this hacking and theft perpetrated against consumers - again, mostly teenagers - by "removing trading" - but chose not to.  Instead, Valve instituted new two-factor security and an "escrow" system where Valve held onto items for a short period of time before delivery between users' accounts and third-party bot or trading accounts.[29]

112.    Valve is aware users get scammed from gambling bots operating inside the Valve Marketplace, and publishes a list of Frequently Asked Questions to deal with this issue, including one called Gambling Bot Trade Offer:  "A fake gambling bot tells you that you have won an item jackpot, but in order to receive the items, you must first accept their trade offer. After receiving your items, the user blocks your messages and keeps your items. Tip: Never trade an item away when prompted by another user or bot if you cannot verify their claim."[30]

---

[27] http://store.steampowered.com/news/19618/
[28] http://store.steampowered.com/news/19618/
[29] http://store.steampowered.com/news/19618/
[30] https://support.steampowered.com/kb_article.php?ref=3415-WAFH-6433&l=english

COMPLAINT – CLASS ACTION FOR DAMAGES - 30

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

113.     In the summer of 2015, Valve was notified of potential match-fixing, and worked with a European e-sports league to ban the alleged perpetrators. Valve admitted it could monitor players' accounts for activity consistent with gambling and match-fixing.  It also introduced a new rule: "[p]rofessional players, teams and anyone involved in the production of CS:GO events, should under no circumstances gamble on CS:GO matches, associate with high volume CS:GO gamblers, or deliver information to others that might influence their CS:GO bets." [31]

114.     On its own website, Valve explained this decision in greater detail, in the screenshot and full text reproduction below, emphasis by Valve in the original:[32]

> We frequently sponsor third-party events to add to their entertainment value for viewers and broaden the audience for competitive CS:GO. To be eligible to participate in a Valve-sponsored event, players are required to follow the rules provided by that event's organizers.  In addition to that organizer's rules, we expect that players who plan to participate in any future Valve-sponsored event will hold themselves to a high standard of professional integrity.   Professional players, teams, and anyone involved in the production of CS:GO events, should under no circumstances gamble on CS:GO matches, associate with high volume CS:GO gamblers, or deliver information to others that might influence their CS:GO bets. To clarify – as a professional player, team manager or event production staff, it is common to have personal relationships and/or privileged information about other teams and players. **Because of this, we will always assume that you have access to private CS:GO-related "inside information" that might give you an unfair advantage when placing a bet on any CS:GO game or match.** Betting using inside information, or even the perception or suspicion thereof, carries a significant risk of damaging your personal brand, your team, your community, and may lead to exclusion from future Valve-sponsored events. To avoid these risks, we recommend that you never bet on any CS:GO game or match. This recommendation applies both to current professional players and anyone who wishes to participate in a Valve-sponsored CS:GO event in the future. It's important to consider the substantial impact an individual professional Counter-Strike player has on the health and stability of the sport. Performing before an audience of millions of fans, you are ambassadors for your game – the strength of professional Counter-Strike comes from the integrity of its players and teams.

---

[31] http://en.esl-one.com/csgo/katowice-2015/news/update-on-the-offline-qualifier-including-disqualifications-invites-and-more/
[32] http://blog.counter-strike.net/index.php/unnecessary_risks/

COMPLAINT – CLASS ACTION FOR DAMAGES - 31

1

2

3

4

5

6

7

8

9

10

11

12



13     115.    Some gambling sites, such as Diamonds, don't even require players to wager on

14   the outcome of eSports matches, and simply operate roulette-style games where people risk Skins

15   to win more Skins based on the roll of the dice or the outcome of random number generators:[33]

16

17

18

19

20

21

22

23

24

25

26

---

[33] http://csgodiamonds.com/#/

COMPLAINT – CLASS ACTION FOR DAMAGES - 32



116.    As the above screenshot shows, the STEAM logo is prominently displayed and users must login through STEAM to access and bet their Skins.

117.    Valve employees communicate directly with Lounge and provide technical support to the website, according to a Lounge employee and spokesperson.[34] The Valve logo is displayed prominently on the website and users must login to their Steam account to wager on matches on Lounge:[35]

---

[34] http://www.bloomberg.com/features/2016-virtual-guns-counterstrike-gambling/
[35] https://csgolounge.com/

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

1
2
3
4
5
6
7
8
9
10
11
12
13



14    118.    In a post on Valve's forum, a moderator — that is, a Valve spokesperson who

15  manages the forums on behalf of Valve — told "younger" users who think they have been

16  scammed through third party sites such as Lounge to not post on the forums about it.  Rather,

17  those "younger" users who were scammed on a third-party gambling site should contact Valve

18  directly.[36] In this post, the moderator on Steam's own forums told users, including its "younger"

19  users: "Safe betting and trading!"[37]

20

21    119.    Despite these connections, Lounge claims on its website that it is not affiliated

22  with Steam or Valve:

23

24

25

26
_____

[36] http://www.bloomberg.com/features/2016-virtual-guns-counterstrike-gambling/
[37] http://steamcommunity.com/groups/csgolounge/discussions/8/627456486705186974/

COMPLAINT – CLASS ACTION FOR DAMAGES - 34



120.    The above screenshot shows where users are taken when they attempt to place a bet on a match on Lounge — they must login to their Steam account through Steam/Valve's website.

121.    Lounge acts as a sports book or pool betting system: it takes bets on each side of matches and takes a fee from the transaction, which it then, upon information and belief, shares with Valve.

122.    Finally, once users have accumulated Skins or Knives in their Steam accounts through third-party gambling sites, they can convert them to cash through OPSkins.

123.    OPSkins, based in Canada, links directly to a user's Steam account as well[38]:

---

[38] https://opskins.com/;
https://steamcommunity.com/openid/login?openid.ns=http%3A%2F%2Fspecs.openid.net%2Fauth%2F2.0&openid.mode=checkid_setup&openid.return_to=https%3A%2F%2Fopskins.com%2Findex.php&openid.realm=https%3A%2F%2Fopskins.com&openid.identity=http%3A%2F%2Fspecs.openid.net%2Fauth%2F2.0%2Fidentifier_select&openid.claimed_id=http%3A%2F%2Fspecs.openid.net%2Fauth%2F2.0%2Fidentifier_select

COMPLAINT – CLASS ACTION FOR DAMAGES - 35

1
2
3
4
5
6
7
8
9
10



11
12
13
14
15
16
17
18
19
20
21



22        124.    Users on OPSkins can cash out their Skins for real money through their PayPal

23    accounts.

24        125.    CSGOSpeed allows users to play various casino-style games, such as roulette,

25    coin flips, jackpots, blackjack and match betting on CS:GO matches:

26

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

1
2
3
4
5
6
7
8
9
10



11

126.    Users must login to Speed through their Steam account:

12
13
14
15
16
17
18
19
20
21



22

127.    CSGO Crash is a Skins gambling website where users place bets and try to cash

23  out before an arbitrary "crash" occurs on the website.  Users must login through their Steam

24  account:

25
26

Tousley Brain Stephens PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

1
2
3
4
5
6
7
8
9
10



11    128.    SkinArena is a raffle and gambling website using Skins that requires users to login
12
13    through their Steam account:
14
15
16



17
18
19
20
21
22
23

24    129.    Lotto was formed on December 3, 2015, according to its Articles of Incorporation.
25
26    130.    Shuffle was incorporated under Phantoml0rd,Inc., on December 29, 2015,
according to its Articles of Incorporation.

COMPLAINT – CLASS ACTION FOR DAMAGES - 38

131.     According to an investigative report by the e-sports journalist Richard Lewis, Varga and a French partner used the internet and the U.S. federal banking system to transfer cash, discuss their ownership interests in Shuffle, share inside data on when the Shuffle algorithm was in Varga's advantage (or disadvantage) to record videos showing him winning (or losing) and otherwise admitted ownership of Shuffle.[39]

132.     Lotto and Shuffle run Skins pool betting websites that are purely games of chance and pure gambling.

133.     On each site, users put up Skins into a large pool, and one winner is chosen at random to take all of the Skins.

134.     These Skins can be sold like real money, making Lotto and Shuffle gambling websites.

135.     Valve admits that it allows these third-party websites, including but not limited to Lotto and Shuffle, to have authenticated Steam accounts and trade on the Steam marketplace.[40]

136.     Valve has the power to stop these third-party sites from accessing the Steam Marketplace and engaging in gambling transactions, but chooses not to.

137.     Thus, users deposit real money on Valve's website, connect that real money account to nominal third-party websites with direct connections to Valve where users can participate in various forms of gambling, and then cash out their account balances, converting Skins into real money.  All of these gambling transactions between users and third party gambling websites actually take place on the Valve serves because Skins are never actually transferred from Valve's servers and computer system.

---

[39] https://www.youtube.com/watch?v=dY3ltGjUBUo
[40] http://www.dailydot.com/esports/skin-betting-csgo-lawsuit-valve/

COMPLAINT – CLASS ACTION FOR DAMAGES - 39

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

138.    Put another way: Valve's servers host the gambling website accounts and OPSkins accounts, and the trades physically take place among these Valve accounts — users, gambling websites and cash-out websites. In the barkeeper analogy, users buy chips from the bartender, gamble in one backroom and cash out in another, all under Valve's roof.

139.    This is an illegal scheme designed to bypass state-by-state gambling laws.

**C.    How Unregulated Gambling Harms Consumers**

140.    Because Valve has helped to create an unregulated, international gambling concern with no oversight that targets teenagers specifically, Plaintiffs and the class have been damaged.

141.    This unregulated market is ripe for scams, cheating, fraud and other harm to users. For instance, there have been numerous instances of match-fixing in CS:GO matches: in January 2015, it became clear that a highly qualified team of CS:GO players fixed matches against lesser teams.[41]

142.    For instance, there are rigged roulette websites operating in Russia, according to Valve.[42]

143.    In 2016, "reports of a particularly high-profile incident reached Valve, and the company contacted CSGO Lounge to help identify the culprits....  In the end, Valve banned seven players from events it sponsors, and forbade professional players and team staff from gambling on matches, associating with high-volume gamblers, or sharing inside information."[43]

144.    In June 2016, Diamonds admitted it was providing a sponsored player with advance notice when he would win spins on its site, so that the user would record himself playing

---

[41] http://www.dailydot.com/esports/match-fixing-counter-strike-ibuypower-netcode-guides/
[42] http://www.dailydot.com/esports/skin-betting-csgo-lawsuit-valve/
[43]  http://www.bloomberg.com/features/2016-virtual-guns-counterstrike-gambling/

COMPLAINT – CLASS ACTION FOR DAMAGES - 40

and winning, post this video to YouTube and social media sites, and generate excitement and new users for Diamonds' website.[44]

145.   Having well-known YouTube and Twitch personalities endorse these games and generate excitement for Skins gambling became the best way to reach users and advertise the skins gambling websites. Martin, Cassell, and Varga are such personalities, having over ten million subscribers via YouTube and other streaming video services like Twitch.tv.

146.   Martin, Cassell, and Varga each made multiple YouTube videos, viewed by Plaintiffs and the class, purporting to show themselves winning Skins pools.  In each video, none of the three indicate that they are owners, sponsors or otherwise affiliated with the website.[45]

147.   In Martin's first video mentioning CSGOLotto, he claims that he "found a new site" to bet on and that he won a "small pot" and that it was "like the coolest feeling ever."[46] He goes on to mention that, by following the site on Twitter, the owners of the website contacted him to enter into a sponsorship deal by giving him skins to use to bet on the site while streaming to his large audience.

148.   Other videos contain advertisements and inducements to gamble, and include titles such as "How to Win $13,000 in 5 minutes (CS:GO Betting)"[47] or "WINNING BIG $$$$!!! (CS:GO Betting)"[48] or "Phantoml0rd 29000$ win on CSGOShuffle"[49] and clearly depict Martin,

---

[44] http://www.esportsbettingreport.com/csgo-diamonds-skin-betting-m0e/;
http://www.twitlonger.com/show/n_1sopll1
[45] https://www.youtube.com/watch?v=88oXvWaczoY; *see also*
*https://www.youtube.com/watch?v=7UTP97rRRgs*; *see also* https://www.youtube.com/watch?v=_8fU2QG-lV0&feature=youtu.be (Martin announced on Twitter on July 4, 2016 that he had removed public access to his gambling videos, stating "I privated them for the time being, they are not deleted").
[46] https://www.youtube.com/watch?v=oqle-lQjac8
[47] https://www.youtube.com/watch?v=_V-dS74WJTw
[48] https://www.youtube.com/watch?v=-f6OFbaGf9I
[49] https://www.youtube.com/watch?v=SBSYtficmdc

COMPLAINT – CLASS ACTION FOR DAMAGES - 41

Cassell, and Varga winning large amounts of real money – not Skins – by gambling on these sites.

149.    These videos have more than a million total views[50], and Cassell's YouTube channel has more than 9,000,000 subscribers.[51]

150.    These videos show how Martin, Cassell, and Varga rig their own website to the detriment of CS:GO players, Plaintiff and the Class.

151.    The videos and other related promotions are highly lucrative for Martin and Cassell. For example, in 2013 alone, Martin expected to earn approximately $300,000 in revenue from video game sponsorships and promotions.[52]

152.    These videos show the harm that comes to CS:GO players, Plaintiffs and the Class from having unregulated Skins gambling.

153.    The YouTube channel h3h3Productions uncovered details about Martin and Cassell's ownership interest in Lotto, and posted a 13 minute video detailing their deceptions: https://www.youtube.com/watch?v=_8fU2QG-lV0&feature=share.

154.    Martin publicly admitted to the deception in a Twitter post (that Martin later deleted) quoted in a July 5, 2016, Forbes magazine article:[53]

> I've admitted to wishing I was more upfront about owning the site. It was always public info but I was never very outspoken about it. My idea was to keep business business, while the focus of YouTube was simply making entertaining content. Obviously that was misleading to viewers and something I very much regret. I've never

---

[50] https://www.youtube.com/watch?v=_V-dS74WJTw; https://www.youtube.com/watch?v=-f6OFbaGf9I; https://www.youtube.com/watch?v=SBSYtficmdc
[51] https://www.youtube.com/channel/UC1ieoHqKW-yYgDhLHIcx28w
[52] Don Dodson, *Champaign Native Turns Gaming Skills into Lucrative YouTube Career*, The News-Gazette of Champaign, Ill,, Jan. 2, 2014, available at http://www.news-gazette.com/news/local/2014-01-02/champaign-native-turns-gaming-skills-lucrative-youtube-career.html.
[53] Paul Tassi, *CS:GO Lotto Controversy Raises Issues About YouTuber Disclosure, Valve's Indifference*, Forbes Tech, July 5, 2016, available at http://www.forbes.com/sites/insertcoin/2016/07/05/cs-go-lotto-controversy-raises-issues-about-youtuber-disclosure-valves-indifference/#5a6ff45a4500

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

been perfect and I 100% own up to that mistake….That being said, everything we've done up until this point has been legal, that has been a #1 priority of ours. The day it becomes illegal is the day we cease activity.

155.    Martin published a video apology on July 5, 2016, on YouTube for his role in deceiving customers on his popular CSGOLotto gambling site, confirming his ownership interest, telling customers he does not condone gambling under the age of 18, and stating that all of the games on the site are "legitimate."[54] Martin then deleted the video a day later.[55]

156.    Plaintiffs would not have played on sites such as Lotto if they knew that Lotto was manipulating its products and videos to make it appear as if the people winning were actually winning, and instead were coordinating behind the scenes to misrepresent their websites.

157.    Similarly, Varga's ownership of Shuffle was brought to light via the online personality Richard Lewis, who was given records of online conversations between Varga and Shuffle's other owner, Joris Duhau, a French online gambling entrepreneur responsible for building and coding the website.[56]

158.    The records reveal several instances of Varga offering payments to Joris Duhau, asking for percentages of his own likelihood to win on the site, and for more skins to bet on his stream in order to advertise to his viewers.[57]

159.    Like Martin and Cassell, Varga never disclosed his ownership interest in the site as he repeatedly gambled and won against other users using house skins to enrich Shuffle.

---

[54] The video apology is still available for viewing due to multiple sources who have reuploaded the video. See https://www.youtube.com/watch?v=xeq91UgvvRA
[55] Id.
[56] https://www.youtube.com/watch?v=dY3ltGjUBUo
[57] http://www.esportsbettingreport.com/csgoshuffle-phantomlord-joris-chat-logs-skin-gambling/

COMPLAINT – CLASS ACTION FOR DAMAGES - 43

160.    After Martin and Cassell's deception became known, Valve intervened, for a short time.  On July 4, 2016, Valve cut off access to Lotto to the Steam Marketplace after news of Lotto's owners YouTube videos, discussed above, was reported in the news.

161.    The website pcgamesn.com[58] reported that "a message from Valve…warns that [Lotto] has been flagged as 'phishing, scamming, spamming, or delivering malware.'"



162.    Valve still allows users to continue on and bet their Skins on this account even though it says it was blocked for being "engaged in phishing, scamming, spamming, or delivering malware."

163.    The action by Valve to limit access to Lotto definitively process that Valve, if it wanted to, could cut off access by gambling sites such as Lounge, Diamonds, Lotto, or any other website with Skins gambling.  However, Valve has chosen to continue facilitating gambling within its Steam marketplace.

---

[58] http://www.pcgamesn.com/counter-strike-global-offensive/csgolotto-csgo-gambling-tmartn-prosyndicate

COMPLAINT – CLASS ACTION FOR DAMAGES - 44

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

164.     The conversation logs between Duhau and Varga confirm that Valve can and does shut off user's access to gambling sites as they believed that their use of a shorter domain name prompted Valve to blacklist the shorter domain, thus restricting access.[59]

165.     Valve continues to defraud consumers by not recognizing the gambling ecosystem for what it is, and knowingly telling consumers that Lotto was blocked because of reasons other than that unregulated gambling harms consumers, and Lotto and Shuffle are just the only ones to be publicly caught so far.

166.     Valve knows that there are websites in Russia that have rigged roulette and other casino-style games, yet continues to allow those websites, and websites with other gambling games, to operate within the Steam Marketplace on Valve's servers, even though it has the power, ability, and duty to cut off access like it did to Lotto.

167.     After calling Lotto a potential scam website, Valve reversed course and eliminated the webpage warning, allowing teenagers and the class full access to Lotto from the Valve account.

168.     In explaining this decision, a Valve agent, employee and/or representative with the online screen name "KillahInstinct"[60] told users on Reddit.com that a volunteer for Valve blocked Lotto erroneously.  Specifically, KillahInstinct said that Lotto was added to the "URL blacklist" which is "generally only used for malicious* links and blocks links throughout Steam everywhere and therefor used with extreme caution."  By "malicious", KillahInstinct meant "malware, phishing, scam sites" and noted that "[a]s we all know, there are **a lot** of them out

---

[59] http://www.esportsbettingreport.com/csgoshuffle-phantomlord-joris-chat-logs-skin-gambling/#Steam_has_previously_interacted_with_combatting_gambling_sites
[60] https://www.reddit.com/r/GlobalOffensive/comments/4r7p0a/csgo_lotto_banned_on_steam/

COMPLAINT – CLASS ACTION FOR DAMAGES - 45

there." (emphasis by KillahInstinct).  That is, Valve is aware that because of the real-world value of Skins, there are **"a lot"** of scam and malicious websites that target the users of CS:GO.

169.    KillahInstinct went on to explain that it was a "mistake" to block Lotto by a fellow volunteer employee of Valve because KillahInstinct was on vacation. Further, KillahInstinct made it clear that he was "not commenting if [Lotto] is bad, morally wrong, etc. - I am just saying that I haven't seen evidence of that it's malicious in the way that it should be before we add something to a global filter." [61]

170.    A user then asked how Valve decides which gambling sites are allowed, and KillahInstinct replied, "Simple, we don't.  As I said, we only block malicious sites." [62]

171.    KillahInstinct went on to explain that pure Skins gambling websites like CSGOJackpot.com, CSGoDouble and CSGoShuffle are "legit" and that if one of them is banned it can contact Steam support to remove the ban.  That is, a Valve employee discussed gambling websites as "legit" and admitted that Valve's support team can help gambling websites regain access to the Steam marketplace.

172.    For instance, KillahInstinct communicated directly with a reddit user who complained that his website, bitskins.com, which is used for people to cash out their Skins into real money, was blacklisted.  In response, KillahInstinct told this person to contact Valve's Steam Support directly to fix this issue.  This means that Valve is working directly with companies that cash out Skins for real money to help them access the Steam Marketplace when they lose that access.

---

[61] https://www.reddit.com/r/GlobalOffensive/comments/4r7p0a/csgo_lotto_banned_on_steam/
[62] https://www.reddit.com/r/GlobalOffensive/comments/4r7p0a/csgo_lotto_banned_on_steam/

COMPLAINT – CLASS ACTION FOR DAMAGES - 46

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

173.   KillahInstinct admitted that Valve is allowing the Skins gambling economy to continue and that he does not like how the Skins gambling community has become and that "it's all about profit, but I can hardly fault Valve for that."[63]

174.   KillahInstinct admitted that if they blocked Lotto because its owners were a scam website that rigged the gambling games and made videos of themselves gambling on their own sites, "I think we could end up blocking every gamble (sic) site if that were the case.  Having proof of malware/scams of a site is not the same as dodgy business practices." [64]

175.   In another post, KillahInstinct said that Valve could disable bot accounts, like those used for effectuating and facilitating gambling, if it chose to.[65]

176.   Valve has the technical capabilities to block access to any gambling site it chooses to, but made an affirmative decision to instead work directly with third-party gambling websites to give them access to Valve's computers in order to facilitate their gambling transactions.

177.   In sum, Valve has always had the ability to modify, regulate, begin, and end the skins market and gambling as it saw fit, but refused to do so. Instead, it took several recent controversies to force Valve to respond to the realities of the economy it created and to act accordingly to protect its own users.

**D.    Valve's Cease and Desist Letter and Subsequent Closing of Skins Gambling Websites**

178.   On July 13, 2016, shortly after undersigned counsel filed the first three lawsuits involving Skins gambling, Valve posted an "In-Game Item Trading Update" that addressed Skins gambling ("Skins Gambling Update").[66]

---

[63] https://www.reddit.com/r/GlobalOffensive/comments/4r7p0a/csgo_lotto_banned_on_steam/d4zx0he
[64] https://www.reddit.com/r/GlobalOffensive/comments/4r7p0a/csgo_lotto_banned_on_steam/
[65] https://www.reddit.com/r/Steam/comments/4r97he/video_series_teaching_how_to_make_steamcommunity/
[66] [66] http://store.steampowered.com/news/22883/

COMPLAINT – CLASS ACTION FOR DAMAGES - 47

179.    The Skins Gambling Update acknowledged that, as a result of the in-game trading capabilities in Steam, "a number of gambling sites started leveraging the Steam trading system" but that "we have no business relationships with any of these sites.  We have never received any revenue from them."

180.    In the Skins Gambling Update, Valve described how gambling on Steam works: "These sites have basically pieced together their operations in a two-part fashion.  First, they are using the OpenID API as a way for users to prove ownership of their Steam accounts and items…Second, they create automated Steam accounts that make the same web calls as individual Steam users."

181.    In the Skins Gambling Update, Valve alleged that "making the same web calls as Steam users to run a gambling business is not allowed by our API nor our user agreements."

182.    Valve has thus alleged unauthorized use of Steam by gambling websites such as Lotto, Lounge, Diamonds and Shuffle.

183.    In the Skins Gambling Update, Valve claimed that it would "start sending notices to these sites requesting they cease operations through Steam, and further pursue the matter as necessary."

184.    Recognizing that the value of Skins was inflated by the ability to gamble and cash them out, Valve warned that "Users should probably consider this information as they manage their in-game item inventory and trade activity."

185.    No facts in the "Skins Gambling Update" were unknown to Valve before undersigned counsel filed the first lawsuits.

186.    There was nothing preventing Valve from taking the actions described in the Skins Gambling Update before it did, and the publicity and attention that resulted from litigation

against Valve precipitated Valve's actions.  In the alternative, the information about Lotto as described above, alone or in conjunction with the lawsuits, precipitated Valve's actions.

187.    Valve's actions in the Skins Gambling Update definitively shows that Valve is aware of how it facilitates the Skins gambling ecosystem and how it has the absolute control over Skins gambling.

188.    Immediately after this announcement, Skins gambling websites such as CSGODouble, CSGOWild, CSGOCasino, CSGOHouse, Diamonds, CSGO500, and other gambling websites closed down and/or stopped accepting deposits.[67]

189.    In an undated letter to 23 websites, Valve's General Counsel, Karl Quackenbush communicated a cease and desist warning on Valve's letterhead to gambling sites ("Cease and Desist").  In the Cease and Desist, Valve alleged that the gambling sites use of Steam accounts was unauthorized use in violation of the Subscriber Agreement:

> We are aware that you are operating one of the gambling sites listed below. You are using Steam accounts to conduct this business. Your use of Steam is subject to the terms of the Steam Subscriber Agreement ("SSA"). http://store.steampowered.com/subscriber_agreement/. Under the SSA Steam and Steam services are licensed for personal, non-commercial use only. Your commercial use of Steam accounts is unlicensed and in violation of the SSA. You should immediately cease and desist further use of your Steam accounts for any commercial purpose. If you fail to do this within ten (10) days Valve will pursue all available remedies including without limitation terminating your accounts.

Karl Quackenbush

General Counsel, Valve Corp.

190.    The Subscriber Agreement, in Section 4, prevents users, such as OPSkins, Lounge and the other Skins Gambling Websites, from using "automation software (bots), mods, hacks,

---

[67] http://www.dexerto.com/news/2016/07/28/richard-lewis-summarises-csgo-betting-sites-closed/;
http://www.esportsbettingreport.com/skin-gambling-sites-status-valve-cease-and-desist/

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

or any other unauthorized third-party software, to modify or automate any Subscription Marketplace process." Thus, unless a Skins Gambling Website and/or OPSkins has been specifically authorized to create bots to trade Skins, Plaintiffs' claims in this case are allegations of unauthorized use of Steam.

191.    To the extent Valve has knowingly allowed, authorized and/or facilitated the use of bots and other automated processes for Skins Gambling Websites and OPSkins, Valve has knowingly allowed, authorized and/or facilitated gambling and violations of the Subscriber Agreement, and has waived its rights to enforce any part of the Subscriber Agreement against any Steam subscriber, such as any Plaintiff.

192.    Valve threatened to terminate these gambling website accounts, which shows that Valve has had the power all along and still retains the power to end Skins Gambling, but chooses not to.

193.    Within 10 days of the Skins Gambling Update and after Valve sent its Cease and Desist, according to an analysis from Esports Betting Report, approximately nine (9) of the twenty three (23) gambling websites had shut down or announced plans to shut down, with the others operating normally or affirmatively stating they would not shut down.[68]

194.    Valve's Cease and Desist letter also forced CSGOLounge, the preeminent online sports book for betting on professional CS:GO matches, to seek gambling licenses in order to legalize their operations, and prevent users within the United States from betting on the website.[69]

---

[68] http://www.esportsbettingreport.com/skin-gambling-sites-status-valve-cease-and-desist/
[69] https://csgolounge.com/notice

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

195.    It is unclear whether, despite these gambling websites continuing to operate more than 10 days after the Cease and Desist, Valve has taken any additional steps to shut down Skins Gambling.

196.    As a result of the beginning of the shutdown of Skins Gambling, the price of Skins in the markets has dropped because of the lack of ability to gamble Skins, and the risk of websites shutting down and not being able to return people's Skins.[70]

197.    Valve is well aware that many of their users are teenagers and/or young adults. Steam's account requires users to check a box indicating they are 13 years of age or older, and does not require users to read the Subscriber Agreement before creating a Steam account:[71]



198.    Plaintiffs signed into their Steam accounts through the third-party websites including Lounge, Lotto, Shuffle, Diamonds, Speed and Crash.

---

[70] http://www.thescoreesports.com/csgo/news/9258-gambling-experts-decline-in-skin-prices-expected-but-no-long-term-damage-to-premier-events; https://blog.opskins.com/?p=2099
[71] https://store.steampowered.com/join/?

COMPLAINT – CLASS ACTION FOR DAMAGES - 51

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

199.    Plaintiffs were aware Skins had real world value and could be cashed out on sites such as OPSkins.

200.    Plaintiffs then used those Skins to place bets on Lounge, Shuffle, Lotto, Diamonds, Speed, Crash and other sites through trading Skins to each via their Steam accounts, hosted and facilitated by Valve, and lost Skins, and therefore the real world cash value of these Skins, in these transactions.

201.    Plaintiffs paid a premium for Skins that they otherwise would not have paid because the ability to gamble and cash them out for real money inflated the value in the Skins market.

## CLASS ALLEGATIONS

202.    A class action is the proper form to bring Plaintiffs' claims under FRCP 23. The potential Class is so large that joinder of all members would be impracticable. Additionally, there are questions of law or fact common to the Class, the claims or defenses of the representative parties are typical of the claims or defenses of the Class, and the representative parties will fairly and adequately protect the interests of the Class.

203.    This action satisfies all of the implicit and explicit requirements of FRCP, including numerosity, commonality, typicality, adequacy, predominance and superiority.

204.    **Ascertainability:** Plaintiffs can and shall propose an administratively feasible method by which class members can be identified.

205.    **Numerosity**: the Class is so numerous that joinder of all members is impracticable.  While the exact number is not known at this time, it is generally ascertainable by appropriate discovery.  News accounts discuss how millions of users compete on the websites of Defendant and its unnamed co-conspirators.

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

206.     **Commonality:** the claims made by Plaintiffs meet the commonality requirement because they present shared questions of law and fact, and resolving these questions will resolve the classwide litigation. These shared questions predominate over individual questions, and they include, without limitation:

a. Whether Plaintiffs and members of the Class entered into contracts with Defendants over the past four years;
b. Whether such contracts are *per se* void, pursuant to applicable state law;
c. Whether such contracts are void pursuant to applicable civil law;
d. Whether the Terms of Use are unconscionable, illusory, fraudulent, or otherwise invalid;
e. Whether Plaintiffs and members of the Class paid monies to Defendants in consideration of those contracts;
f. Whether Valve's operations, and those of third-party websites Valve supports, including but not limited to Lotto and Shuffle, are games of chance under all applicable laws and rules;
g. Whether the operations of Valve and Lotto violate Washington law;
h. Whether Plaintiffs and members of the class are entitled to restitution and entitled to recovery of lost wagers from Valve, Lotto, Shuffle, Varga, Martin and Cassell, or the disgorgement of Defendants' profits and revenue;
i. Whether Defendants acted in concert with other CSGO gambling sites to condone, allow, or promote the practice of betting and gambling through the use of CSGO items, in violation of federal RICO statutes and/or their state equivalents;
j. Whether Defendants were negligent or otherwise acted wrongfully in allowing and encouraging users to utilize their service to bet and gamble on CSGO games;
k. Whether Defendants owed duties to the Plaintiffs and the proposed Class members, the scope of those duties, and if they breached those duties;
l. Whether consumers such as the Plaintiffs and the proposed Class members were harmed by Defendants' actions, as described in detail above;
m. The extent of the damages caused by the Defendants' acts; and
n. Whether Defendants violated state consumer protection statutes as described below.

207.     **Typicality**: Plaintiffs' claims are typical of those of the other Class members because Plaintiff, like every other Class member, was induced to use Defendants' sites based on false and misleading advertisements of fair play, and lack of information about having to compete against players with inside information.

COMPLAINT – CLASS ACTION FOR DAMAGES - 53

208.   The claims of the Class Representative Plaintiffs are furthermore typical of other Class members because they make the same claims as other class members. Plaintiffs have an interest in seeking compensation from Defendants.

209.   **Adequacy**: Plaintiffs will fairly and adequately represent and protect the interests of the Class in that he has no disabling conflicts of interest that would be antagonistic to those of the other members of the Class. Plaintiffs seeks no relief that is antagonistic or adverse to the members of the Class and the infringement of the rights and the damages he has suffered are typical of other Class members.

210.   **Superiority:** The class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of class members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain class members, who could not individually afford to litigate a complex claim against large corporate defendants. Further, even for those class members who could afford to litigate such a claim, it would still be economically impractical.

211.   The nature of this action and the nature of Washington and federal laws available to Plaintiff and the Class makes the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiffs and the Class for the wrongs alleged. Without the class action mechanism, Defendants would necessarily gain an unconscionable advantage since they would be able to exploit and overwhelm the limited resources of each individual Class member with superior financial and legal resources; and the costs of individual suits could

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

unreasonably consume the amounts that would be recovered. Likewise, proof of a common course of conduct to which Plaintiffs were exposed is representative of that experienced by the Class, and will establish the right of each member of the Class to recover on the cause of action alleged; and Individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

212.    The proposed class is described as follows:

> **"All persons in the United States ("National Class") and/or in each individual state ("State Subclasses") who purchased Skins or whose money was used to purchase Skins in any account with Defendants and/or their unnamed co-conspirators"**

213.    Plaintiffs reserve the right to modify or amend the definition of the proposed class and to modify, amend or remove proposed subclasses, before the Court determines whether certification is appropriate and as the parties engage in discovery.

214.    Plaintiffs will fairly and adequately protect the interests of the Class. The interests of the class representative are consistent with those of the other members of the Class. In addition, Plaintiff is represented by experienced and able counsel who have expertise in the areas of tort law, trial practice, and class action representation.

215.    The class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Because of the number and nature of common questions of fact and law, multiple separate lawsuits would not serve the interest of judicial economy.

216.    Excluded from the Class are:
    a.    Defendant and any entities in which Defendant has a controlling interest;
    b.    Any entities in which Defendants' officers, directors, or employees are employed and any of the legal representatives, heirs, successors, or assigns of Defendant;
    c.    The Judge to whom this case is assigned and any member of the Judge's immediate family and any other judicial officer assigned to this case;

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

d.      All persons or entities that properly execute and timely file a request for exclusion from the Class;

e.      Any attorneys representing the Plaintiff or the Class.

## COUNT I
## VIOLATIONS OF STATE GAMBLING STATUTES
**(On Behalf of the National Class and State Subclasses Against All Defendants)**

217.    Plaintiffs reallege and incorporate by reference the allegations contained in all preceding and subsequent paragraphs, as if fully set forth herein.

218.    Defendants' activities as described in detail above are games of chance and/or illegal gambling pursuant to the statutes of every state and territory in the United States.  These statutes also entitle Plaintiffs and/or the members of their households to recover for their losses, render any and all contracts or agreements between Plaintiffs and Defendants as illegal and therefore null and void, and render all attempts by Defendants to collect fees and force the transfer of Skins from Plaintiffs' accounts to Defendants' accounts as enforcement of an illegal contract.

219.    Specifically, Defendants' activities as described above violate the following statutes, which also allow Plaintiffs to recover for their gambling losses and which make any contract between Plaintiffs and Defendants void:

a.      Alabama: Ala. Code § 8-1-150 ; Ala. Code § 8-1-151; Ala. Code § 13A-12-20; Ala. Code § 13A-12-21; Ala. Code § 13A-12-22; Ala. Code § 13A-12-23;

b.      Alaska: Alaska Stat. Ann. § 05.15.100; Alaska Stat. Ann. § 11.66.200; Alaska Stat. Ann. § 11.66.210; Alaska Stat. Ann. § 11.66.230;

c.      Arizona: Ariz. Rev. Stat. Ann. § 13-3301; Ariz. Rev. Stat. Ann. § 13-3303; Ariz. Rev. Stat. Ann. § 13-3304; Ariz. Rev. Stat. Ann. § 13-3305; Ariz. Rev. Stat. Ann. § 13-2314.04;

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

d.  Arkansas: Ark. Code Ann. § 16-118-103; Ark. Code Ann. § 5-66-101; Ark. Code Ann. § 5-66-103; Ark. Code Ann. § 5-66-104; Ark. Code Ann. § 5-66-106

e.  California: Cal. Penal Code § 330; Cal. Penal Code § 337a; Cal. Penal Code § 319; Cal. Penal Code § 320; Cal. Penal Code § 321; Cal. Penal Code § 337t(f);

f.  Colorado: C.R.S.A § 18-10-102(2); C.R.S.A § 18-10-102(8); C.R.S.A § 18-10-103;

g.  Connecticut: C.G.S.A. § 52-553; C.G.S.A. § 53-278b; C.G.S.A. § 53-278a;

h.  Delaware: 11 Del. C. § 1401; 11 Del. C. § 1403; Del.C.Ann. Const., Art. 2, § 17;

i.  District of Columbia: § 16-1702; § 16-1702; § 16-1703; DC ST § 22-1704;

j.  Florida: F.S.A. § 849.14; F.S.A. § 849.26; F.S.A. § 849.08; F.S.A. § 849.11; F.S.A. § 849.12;

k.  Georgia: § 13-8-3; § 16-12-21; § 16-12-22; § 16-12-26; § 16-12-27; § 16-12-35

l.  Hawaii: § 712-1220; § 712-1221; § 712-1222; § 712-1223;

m.  Idaho: Const. Art. III, § 20; § 18-3801; § 18-3802;

n.  Illinois: 20 ILCS 5/28-1; 5/28-7; 5/28-8;

o.  Indiana: IC 35-45-5-1; IC 35-45-5-2; IC 35-45-5-3; IC 35-45-5-4;

p.  Iowa: 725.7; 725.8; 725.13; 725.16; 725.19;

q.  Kansas: K.S.A. 21-6404; K.S.A 21-6406;

r.  Kentucky: 372.010; 372.020; 528.010;

s.  Louisiana: LSA-R.S. 14:90; LSA-R.S. 14:90.5;

t.  Maine: Me. Rev. Stat. tit. 17-A, § 952; Me. Rev. Stat. tit. 17-A, § 953; Me. Rev. Stat. tit. 17-A, § 954; Me. Rev. Stat. tit. 17-A, § 958;

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

u. Maryland: Md. Crim. Law Code Ann. § 12-101; Md. Crim. Law Code Ann. § 12-102; Md. Crim. Law Code Ann. § 12-110;

v. Michigan: Mich. Comp. Laws Ann. § 750.301; Mich. Comp. Laws Ann. § 750.315

w. Minnesota: Minn. Stat. Ann. § 541.21; Minn. Stat. Ann. § 609.75; Minn. Stat. Ann. § 609.755; Minn. Stat. Ann. § 609.76 (West);

x. Mississippi: Miss. Code. Ann. § 87-1-1; Miss. Code. Ann. § 87-1-3; Miss. Code. Ann. § 87-1-5; Miss. Code. Ann. § 97-33-29;

y. Missouri: Mo. Rev. Stat. Ann. § 434.010; Mo. Rev. Stat. Ann. § 434.030; Mo. Rev. Stat. Ann. § 434.040; Mo. Rev. Stat. Ann. § 572.010; Mo. Rev. Stat. Ann. § 572.020; Mo. Rev. Stat. Ann. § 572.030; Mo. Rev. Stat. Ann. § 572.040;

z. Montana: Mont. Code Ann. § 23-5-131; Mont. Code Ann. § 23-5-112; Mont. Code Ann. § 23-5-151;

aa. Nebraska: Neb. Rev. Stat. Ann. § 28-1354; Neb. Rev. Stat. Ann. § 28-1355; Neb. Rev. Stat. Ann. § 28-1101; Neb. Rev. Stat. Ann. § 28-1102; Neb. Rev. Stat. Ann. § 28-1103; Neb. Rev. Stat. Ann. § 28-1104; Neb. Rev. Stat. Ann. § 28-1105.01;

bb. Nevada: Nev. Rev. Stat. Ann. § 463.0152; Nev. Rev. Stat. Ann. § 463.0171; Nev. Rev. Stat. Ann. § 463.0193; Nev. Rev. Stat. Ann. § 463.160 (West)

cc. New Hampshire: N.H. Rev. Stat. Ann. § 338:1; N.H. Rev. Stat. Ann. § 338:2; N.H. Rev. Stat. Ann. § 338:3; N.H. Rev. Stat. Ann. § 338:4; N.H. Rev. Stat. Ann. § 647:2;

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

dd. New Jersey: N.J. Stat. Ann. § 2A:40-1; N.J. Stat. Ann. § 2A:40-2; N.J. Stat. Ann. § 2A:40-3; N.J. Stat. Ann. § 2A:40-5; N.J. Stat. Ann. § 2C:37-1; N.J. Stat. Ann. § 2C:37-2;

ee. New Mexico: N.M. Stat. Ann. § 44-5-1; N.M. Stat. Ann. § 44-5-4; N.M. Stat. Ann. § 30-19-1; N.M. Stat. Ann. § 30-19-2; N.M. Stat. Ann. § 30-19-3

ff. New York: New York GOL § 5-401; New York GOL § 5-411; New York GOL § 5-421; NYPL § 225.10;

gg. North Carolina: N.C. Gen. Stat. Ann. § 16-1; N.C. Gen. Stat. Ann. § 14-292;

hh. North Dakota: N.D. Cent. Code Ann. § 9-08-01; N.D. Cent. Code Ann. § 12.1-28-01; N.D. Cent. Code Ann. § 12.1-28-02;

ii. Ohio: Ohio Rev. Code Ann. § 3763.01; Ohio Rev. Code Ann. § 3763.02 ; Ohio Rev. Code Ann. § 3763.04; Ohio Rev. Code Ann. § 2915.01;

jj. Oklahoma: Okla. Stat. Ann. tit. 21, § 981; Okla. Stat. Ann. tit. 21, § 982 (West);

kk. Oregon: Or. Rev. Stat. Ann. § 30.740; Or. Rev. Stat. Ann. § 167.117; Or. Rev. Stat. Ann. § 167.109; Or. Rev. Stat. Ann. § 167.112; Or. Rev. Stat. Ann. § 167.122;

ll. Pennsylvania: Pa. Stat. Ann. tit. 73, § 2031; 18 Pa. Stat. and Consol. Stat. Ann. § 5513 11;

mm. Rhode Island: R.I. Gen. Laws Ann. § 11-19-1;

nn. South Carolina: S.C. Code Ann. § 32-1-10; S.C. Code Ann. § 32-1-20; S.C. Code Ann. § 16-19-40; S.C. Code Ann. § 16-19-80;

oo. South Dakota: S.D. Codified Laws § 53-9-2; S.D. Codified Laws § 21-6-1; S.D. Codified Laws § 22-25-1;

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

pp. Tennessee: Tenn. Code Ann. § 29-19-101; Tenn. Code Ann. § 29-19-102; Tenn. Code Ann. § 29-19-104; Tenn. Code Ann. § 39-17-501; Tenn. Code Ann. § 39-17-502; Tenn. Code Ann. § 39-17-503; Tenn. Code Ann. § 39-17-504 (West);

qq. Texas: Tex. Penal Code Ann. § 47.02 (Vernon); Tex. Penal Code Ann. § 47.03 (Vernon); Tex. Penal Code Ann. § 47.01 (Vernon);

rr. Utah: Utah Const. art. VI, § 27; Utah Code Ann. § 76-10-1101; Utah Code Ann. § 76-10-1102; Utah Code Ann. § 76-10-1104;

ss. Vermont: Vt. Stat. Ann. tit. 9, § 3981; Vt. Stat. Ann. tit. 9, § 3982; Vt. Stat. Ann. tit. 13, § 2134; Vt. Stat. Ann. tit. 9, § 3981; Vt. Stat. Ann. tit. 9, § 3982; Vt. Stat. Ann. tit. 13, § 2134;

tt. Virginia: Va. Code Ann. § 11-14; Va. Code Ann. § 11-15; Va. Code Ann. § 11-16; Va. Code Ann. § 18.2-325; Va. Code Ann. § 18.2-326; Va. Code Ann. § 18.2-328;

uu. Washington: Wash. Rev. Code Ann. § 4.24.070; Wash. Rev. Code Ann. § 4.24.090; Wash. Rev. Code Ann. § 9.46.0237; Wash. Rev. Code Ann. § 9.46.0225; Wash. Rev. Code Ann. § 9.46.240;

vv. West Virginia: W. Va. Code Ann. § 55-9-2; W. Va. Code Ann. § 55-9-1; W. Va. Code Ann. § 55-9-3; W. Va. Code Ann. § 61-10-4; W. Va. Code Ann. § 61-10-2; and

ww. Wisconsin: Wis. Stat. Ann. § 895.055; Wis. Stat. Ann. § 945.01; Wis. Stat. Ann. § 945.10; Wis. Stat. Ann. § 945.02; Wis. Stat. Ann. § 945.03;

xx. Wyoming: Wyo. Stat. Ann. § 1-23-106; Wyo. Stat. Ann. § 6-7-101; Wyo. Stat. Ann. § 6-7-102; Wyo. Stat. Ann. § 6-7-103.

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

220.    Plaintiffs and members of the proposed class entered into contracts with Defendants that are void as described more specifically above.

221.    Plaintiffs purchased Skins and gambled them on the Skins Gambling Websites, as described more specifically above.

222.    Plaintiffs and members of the proposed class paid consideration for gambling on Skins Gambling Websites, and purchased Skins directly from Valve.  By collecting on these illegal contracts, Defendants violated the law of Washington and/or each state in which Plaintiffs and members of the class are located, and therefore Plaintiffs and members of the proposed class are entitled to damages in the form of restitution for monies paid in connection with these void contracts over the course of the past four (4) years.

**COUNT II**
**UNJUST ENRICHMENT**
**(On Behalf of the National Class and Each State Subclass By All Plaintiffs Against All Defendants)**

223.    Plaintiffs on behalf of themselves and the proposed Class, repeat and reallege all preceding paragraphs as if fully set forth herein.

224.    Plaintiffs and members of the proposed Class conferred a benefit on Defendants by purchasing CS:GO, depositing money, purchasing in-game items, and playing in contests on various websites with which Valve had a financial relationship.

225.    Defendants have further benefited monetarily from unlawful and/or illegal conduct directed to its customers, including from Plaintiffs and members of the class.

226.    Defendants' benefit came at the expense and detriment of Plaintiff and Class members.

227.    Defendants have thus unjustly enriched themselves in retaining the revenues derived from enforcement of illegal contracts, deposits, wagers, purchases and gambling by

COMPLAINT – CLASS ACTION FOR DAMAGES - 61

Plaintiffs and the members of the proposed class, which retention under these circumstances is unjust and inequitable because Defendants entered into or caused to be created illegal, voidable, and unconscionable gambling contracts with Plaintiff and other members of the proposed class, and has created an illegal international gambling economy operating in the United States and targeted at teenagers.

228.    Defendants have benefited from its creation of an illegal gambling scheme through the creation of Skins and the assistance provided to international companies that provide ways to gamble Skins and convert in-game Skins with no cash value into cash value.  Defendants have also benefited from the creation of an illegal gambling market by inflating the value of Skins, something with no intrinsic value, which they then sell or facilitate selling for a fee. Defendants have also benefited from the increased sales, increased exposure, marketing revenue, sponsorship revenue and other financial benefits that CS:GO has brought Valve, OPSkins, Shuffle, and Lotto because of their popularity, which is due almost entirely to Skins gambling.

229.    Plaintiffs and members of the proposed class were injured as a direct and proximate result of Defendants' illegal activities because they paid for items and wagers that were unregulated, illegal gambling activities ripe for fraud, abuse and theft, and with no way of knowing whether they were fairly run.

230.    Because Defendants' retention of the non-gratuitous benefit conferred on it by Plaintiffs and the members of the proposed class is unjust and inequitable, Defendants must pay restitution to Plaintiffs and the members of the proposed class for its unjust enrichment, as ordered by the Court.

231.    Equity and good conscience require that Defendants disgorge profits made thereby, and Plaintiffs and members of the class further seek restitution on this basis.

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

**COUNT III**
**RICO CLAIMS (VIOLATION OF 18 U.S.C. § 1962)**
**(On Behalf of the National Class and Each State Subclass By All Plaintiffs Against All Defendants)**

232.    Plaintiffs on behalf of themselves and the proposed class, repeat and reallege all preceding paragraphs as if fully set forth herein.

233.    The Skins Gambling Websites, Valve, Lotto, Martin, Cassell, Varga, Shuffle and OPSkins are all "persons" under the meaning of 18 U.S.C. § 1961(3).

234.    Valve, Lotto, Martin, Cassell, Varga, Shuffle, the Skins Gambling Websites, and OPSkins's illegal gambling businesses involve five or more persons who conduct, finance, manage, supervise, direct and/or own all or part of Valve, Lotto, Shuffle, the Skins Gambling Sites, and OPSkins, within the meaning of 18 U.S.C. § 1955.

235.    Pursuant to 18 U.S.C. § 1962:

> It shall be unlawful for any person who has received any income derived, directly or indirectly, form a pattern of racketeering activity or through collection of an unlawful debt… to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

236.    Valve, Lotto, Martin, Varga, Shuffle, Cassell and the other non-defendant third-parties identified above in Paragraph 5 named in this count violated 18 U.S.C. § 1962(c) by participating in, facilitating, or conducting the affairs of the Valve, Lounge, OPSkins, Lotto and/or Diamonds RICO Enterprise through a pattern of racketeering activity.

237.    Valve, Lotto, OPSkins, Varga, Shuffle, and the Skins Gambling Websites are operating illegal online gambling websites accessible across the United States. Skins Gambling Websites including Lotto, Shuffle, and OPSkins, all depend on Valve to operate their businesses to facilitate gambling, trades of items, as well as item sales. These entities also rely on a third-

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

party market, like the one hosted by OPSkins and other websites, in order to provide a way for gamblers to cash out their in-game items for cash value, to process these payments, and to set the real world valuation for these items.

238.    Skins Gambling Websites, OPSkins, Varga, Shuffle, Lotto and Valve are the ringleaders of their respective illegal gambling enterprises, as set forth herein.

239.    Martin and Cassell are specifically the ringleaders at Lotto.

240.    Varga is specifically the ringleader at Shuffle.

241.    Independently and collectively, Valve, Lotto, Varga, Shuffle, Martin, and Cassell responsible for facilitating the growth of the illegal internet gambling enterprises, such as those operated by Skins Gambling Websites and OPSkins, that blossomed into a billion dollar industry because they created and provided legitimacy and support for what is, in fact, an illegal gambling activity.

242.    Valve provided money, technical support, and advice for Skins Gambling Websites and OPSkins, providing legitimacy to the illegal gambling that was occurring, continues to occur, and by permitting Skins Gambling Websites and OPSkins to use their logo and infrastructure to attract more bettors.

243.    Plaintiffs placed bets on multiple contests through Skins Gambling Websites including Lotto and Shuffle. The wagers allow Lotto and other sites to operate and profit. The bets were facilitated by Valve, and Valve permits users to buy and sell the winnings of such bets on OPSkins.

244.    Valve, Lotto, Martin, Varga, Shuffle, and Cassell have a direct interest in the operation of OPSkins, Lotto, and Skins Gambling Websites because they profit directly and indirectly through the online gambling websites.

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

245.     Valve's processing of transactions facilitated by Lotto, Shuffle, Skins Gambling Websites and the OPSkins illegal gambling scheme, implicates Valve into the Skins Gambling Websites gambling scheme by directing, conducting, guiding, and participating, directly or indirectly, in the conduct of an enterprise through a pattern of racketeering activity and/or collection of an unlawful debt.

246.     As a result of Defendants' actions, Plaintiffs have suffered financial losses.

247.     Plaintiffs and class members are "person[s] injured in his or her business or property" by reason of Skins Gambling Websites' and OPSkins's and Valve's and Lotto's and Shuffle's and Martin's and Varga's violation of RICO within the meaning of 18 U.S.C. § 1964(c).

248.     The acts alleged herein occurred more than three times and on a daily basis.

249.     Pursuant to 18 U.S.C. § 1964, Plaintiffs are entitled to recover treble damages, costs and attorneys' fees for damages proximately caused by Defendants' RICO enterprise.

**A.     Predicate Act – Violation of 18 U.S.C. § 1955**

250.     Independently and collectively, Valve, Lotto, Varga, Shuffle, Martin, Cassell and the unnamed co-conspirators in this Count are responsible for the growth of the illegal enterprise to become a billion-dollar business by providing legitimacy to what was, in fact, an illegal activity. The mere act of allowing Plaintiffs, and other members of the proposed class, to sign into Steam through Skins Gambling Websites and OPSkins bolstered the credibility of the illegal enterprises in the eyes of unsuspecting bettors.

251.     Martin and Cassell further provided legitimacy to the illegal activity by publishing videos on YouTube and other sites that promoted Lotto as a way to win money by gambling, when they rigged the results and/or did not disclose their ownership and control over Lotto.

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

252.    Varga further provided legitimacy to the illegal activity by publishing videos on YouTube and other sites that promoted Shuffle as a way to win money by gambling, when he rigged the results and/or did not disclose his ownership and control over Shuffle.

253.    Valve, Lotto, Varga, Shuffle, Martin, Cassell and the unnamed co-conspirators all committed a Predicate Act under RICO, violation 18 U.S.C. § 1955, which provides in relevant part:

> (a) Whoever conducts, finances, manages, supervises, directs, or owns all or part of an illegal gambling business shall be fined under this title or imprisoned not more than five years, or both.
> (b) As used in this section—
>     i. "Illegal gambling business" means a gambling business which—is a violation of the law of a State or political subdivision in which it is conducted; involves five or more persons who conduct, finance, manage, supervise, direct, or own all or part of such business; and has been or remains in substantially continuous operation for a period in excess of thirty days or has a gross revenue of $2,000 in any single day.
>                                         **
>     (4) "gambling" includes but is not limited to pool-selling, bookmaking, maintaining slot machines, roulette wheels or dice tables, and conducting lotteries, policy, bolita or numbers games, or selling chances therein.
>                                         **
>     (6) "State" means any State of the United States, the District of Columbia, the Commonwealth of Puerto Rico, and any territory or possession of the United States.

254.    Valve, Lotto, Varga, Shuffle, Martin, Cassell, Skins Gambling Websites and OPSkins are illegal gambling businesses because they meet all three elements of 18 U.S.C. § 1955(b)(1-3).

255.    Valve, Lotto, Varga, Shuffle, Martin, Cassell, Skins Gambling Websites and OpSkins are each "illegal gambling business" within the meaning of 18 U.S.C. § 1955(b)(1), because, as set forth herein, each of their activities violate all state laws and at a minimum, Washington. "State" means any State of the United States. 18 U.S.C. § 1955(b)(6).

256.    Valve, Lotto, Varga, Shuffle, Martin, Cassell, Skins Gambling Websites and PpSkins are each an "illegal gambling business" within the meaning of 18 U.S.C. § 1955(b)(2),

COMPLAINT – CLASS ACTION FOR DAMAGES - 66

because each respective business involves five or more persons who conduct, finance, manage, supervise, direct, or own all or part of the business.

257.    Valve, Lotto, Varga, Shuffle, Martin, Cassell, Skins Gambling Websites and OPSkins are each an "illegal gambling business" within the meaning of 18 U.S.C. § 1955(b)(3), because each have been or remain in substantially continuous operation since at least January 1, 2013, for a period in excess of thirty days or has a gross revenue of $2,000 in any single day.

**B.    The Online Gambling RICO Enterprises**

258.    The following persons, and others presently unknown, have been members of and constitute an "association-in-fact enterprise" within the meaning of RICO:

259.    Lotto, which: 1) created an illegal gambling enterprise; 2) knowingly created and conducted illegal gambling activities in violation of all state laws and at a minimum, Washington, in return for payment of items of value, including significant sums of money; 3) conducted, directed, managed, supervised, directed and owned an illegal gambling business in violation of 18 U.S.C. § 1955.

260.    Martin, who: 1) created an illegal gambling enterprise; 2) knowingly created and conducted illegal gambling activities in violation of all state laws and at a minimum, Washington, in return for payment of items of value, including significant sums of money; 3) conducted, directed, managed, supervised, directed and owned an illegal gambling business in violation of 18 U.S.C. § 1955.

261.    Cassell, who: 1) created an illegal gambling enterprise; 2) knowingly created and conducted illegal gambling activities in violation of all state laws and at a minimum, Washington, in return for payment of items of value, including significant sums of money; 3) conducted,

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

directed, managed, supervised, directed and owned an illegal gambling business in violation of 18 U.S.C. § 1955.

262.    Varga, who: 1) created an illegal gambling enterprise; 2) knowingly created and conducted illegal gambling activities in violation of all state laws and at a minimum, Nevada in return for payment of items of value, including significant sums of money; 3) conducted, directed, managed, supervised, directed and owned an illegal gambling business in violation of 18 U.S.C. § 1955.

263.    Shuffle, which: 1) created an illegal gambling enterprise; 2) knowingly created and conducted illegal gambling activities in violation of all state laws and at a minimum, Nevada in return for payment of items of value, including significant sums of money; 3) conducted, directed, managed, supervised, directed and owned an illegal gambling business in violation of 18 U.S.C. § 1955.

264.    **Skins Gambling Websites**, which: 1) created an illegal gambling enterprise; 2) knowingly created and conducted illegal gambling activities in violation of all state laws and at a minimum, Washington in return for payment of items of value, including significant sums of money; 3) conducted, directed, managed, supervised, directed and owned an illegal gambling business in violation of 18 U.S.C. § 1955.

265.    **Valve**, which: 1) knowingly facilitated the transactions required to conduct the illegal gambling operations of Lotto, as well as CSGO Lounge and CSGO Diamonds; 2) provided technical support and know-how to Lotto, CSGO Lounge and CSGO Diamonds, to permit them to link their own database of users with Steam users. By virtue of this support, implicit promotion and endorsement of Defendants' illegal internet gambling enterprises, Valve thereby gave

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

credibility and legitimacy to these defendants and thus attracted more players to participate as customers in an illegal gambling enterprise.

266.   **OPSkins**, which: 1) knowingly facilitated transactions of users buying, selling, and general cashing-out of items users gained through participation on Skins Gambling Websites illegal gambling enterprises. This support entices and attracts users of all ages to participate on defendants gambling websites so that they might win more valuable items in the hopes of being able to turn an in-game currency into real money.

267.   **Skins Gambling Websites**, each of which engaged in, and whose activities affected interstate and foreign commerce, is an association-in-fact of individuals and corporate entities within the meaning of 18 U.S.C. § 1961(4) and consists of "persons" associated together for a common purpose. Each RICO enterprise had an ongoing organization with an ascertainable structure, and functioned as a continuing unit with separate roles and responsibilities.

268.   Valve, Lotto, Varga, Shuffle, Martin, Cassell, Skins Gambling Websites and OpSkins each participated in the RICO enterprise, but also had an existence separate and distinct from the enterprise.

269.   At all relevant times, Valve, Lotto, Varga, Shuffle, Martin, Cassell, Skins Gambling Websites, and OpSkins operated, controlled, or managed their respective CSGO gambling services through a variety of actions.

270.   Valve, Lotto, Martin, Varga, Shuffle, Cassell, Skins Gambling Websites, and OpSkins participation in the RICO enterprise was necessary for the successful operation of its scheme to conduct an illegal gambling enterprise, both companies controlled and monitored all aspects of eGaming betting and gambling on its respective website and concealed the nature and scope of the illegal gambling enterprise and profited from such concealment.

COMPLAINT – CLASS ACTION FOR DAMAGES - 69

271.    The members of the gambling enterprise served a common purpose: to maximize profits on their respective illegal gambling sites and to collect as many rare in-games item as possible in order to profit from the resale of these items on the third-party market through the use of user fees and bets.

**C.      The Pattern of Racketeering Activity**

272.    Valve, Lotto, Martin, Varga, Shuffle, Cassell, Skins Gambling Websites, and OPSkins conducted and participated in the conduct and the affairs of their respective Online Gambling Enterprises through a pattern of illegal internet gambling pursuant to violations of 18 U.S.C. §1955 thereby constituting racketeering activity that has lasted for several years beginning no later than January 1, 2013, and continuing to this day, and that consisted of numerous and repeated violations of 18 U.S.C. §1955, mail and wire fraud statutes, which prohibit the use of any interstate or foreign mail or wire facility for the purpose of executing a scheme to defraud, in violation of 18 U.S.C. §§ 1341 and 1343.

273.    The purpose of Valve, Varga, Shuffle, Martin, Lotto, Skins Gambling Websites, and OPSkins and the scheme to violate 18 U.S.C. § 1955 was to profit through illegal internet gambling.

274.    By concealing the scope and nature of each illegal gambling enterprise, Valve, Lotto, Martin, Cassell, Varga, Shuffle, Skins Gambling Websites, and OPSkins also maintained and boosted consumer confidence in their respective illegal internet gambling enterprises, their brands, and e-sports betting, all of which furthered their schemes to defraud and helped Valve, Lotto, Martin, Cassell, Skins Gambling Websites, and OpSkins generate more users to play their bet and gamble on their respective sites.

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

275.     As detailed in this Complaint, Valve, Lotto, Varga, Shuffle, Martin, Cassell, Skins Gambling Websites, and OPSkins were well aware that their enterprises constituted illegal internet gambling under federal and individual United States law. Nonetheless, they used money generated from innocent bettors to intentionally subject Plaintiff and Class Members to those risks or consciously disregarded those risks in order to maximize their profits at the expense of Plaintiffs and Class Members.

276.     To carry out, or attempt to carry out the scheme to defraud, Valve, Lotto, Martin, Cassell, Lounge, Varga, Shuffle, OPSkins and Diamonds each individually conducted or participated in the conduct of the affairs of their respective RICO Enterprises through the following pattern of racketeering activity that violated 18 U.S.C. § 1955 and employed the use of the mail and wire facilities, in violation of 18 U.S.C. § 1341 (mail fraud) and § 1343 (wire fraud):

a.   Valve, Lotto, Martin, Varga, Shuffle, Cassell, Skins Gambling Websites, and OPSkins devised and furthered their own schemes to defraud by use of the mail, telephone, and internet, and transmitted, or caused to be transmitted, by means of mail and wire communication travelling in interstate or foreign commerce, user fees and illegal gambling proceeds, writing(s) and/or signal(s), including their respective websites, statements to the press, and communications with other members of their respective RICO Enterprises, as well as the user fees and transactional costs of the illegal internet gambling activities, advertisements and other communications to the Plaintiffs and Class Members; and

b.   Valve, Lotto, Martin, Varga, Shuffle, Cassell, Skins Gambling Websites, and OPSkins each individually utilized the interstate and international mail and wires

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

1   for the purpose of obtaining money or property by means of the omissions, false

2   pretense, and misrepresentations described herein.

3       277.   The Defendants' separate pattern of racketeering activity in violation of 18 U.S.C.

4   § 1955 and the use of the mail and wire fraud statutes included but was not limited to the

5   following:

6       a.   Knowingly conducting illegal gambling activities that violated, at a minimum, the

7           laws of the state of Florida, Nevada and Washington, and thereby also violating

8           18 U.S.C. §1955, a RICO predicate act;

9

10      b.    By transmitting, causing to be transmitted, by means of mail and wire

11          communication and the internet, by travelling in interstate or foreign commerce,

12          between their offices in Washington, Florida, Nevada and various other locations

13          across the United States, communications concealing the illegality of their

14          schemes on their betting websites on a nationwide basis.

15

16      278.   The conduct of Valve, Lotto, Martin, Varga, Shuffle, Cassell, Skins Gambling

17  Websites, and OPSkins in furtherance of their respective illegal activities and gaming was

18  intentional. Plaintiff and Class members were directly harmed as a result of Defendants' conduct.

19      279.   As set forth herein Valve, Lotto, Varga, Shuffle, Martin, Cassell, Skins Gambling

20  Websites, and OPSkins engaged in patterns of related and continuous predicate acts since at least

21  August 1, 2013. The predicate acts constituted a variety of unlawful activities with each

22  conducted with the common goal of defrauding Plaintiff and other Class members and obtaining

23  significant monies and revenues from them while providing an illegal betting website. These

24  predicate acts were related and not isolated events. Further, the predicate acts also had the same

25  or similar results, participants, victims, and methods of commission.

26

COMPLAINT – CLASS ACTION FOR DAMAGES - 72

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

280.     Because of the pattern of racketeering activity by Valve, Lotto, Varga, Shuffle, Martin, Cassell, Skins Gambling Websites, and OPSkins, Plaintiff and Class members have been injured in their business and/or property in multiple ways, including but not limited to the loss of their items, wagers, and fees lost when wagering and betting.

281.     The violations by Valve, Lotto, Varga, Shuffle, Martin, Cassell, Skins Gambling Websites and OPSkins of 18 U.S.C. § 1955 and 18 U.S.C.§ 1962(c) have directly and proximately caused injuries and damages to Plaintiff and Class members in the form of their losses while betting on defendants' illegal gambling websites. As such, Plaintiff and Class members are entitled to bring this class action for three times their actual damages, as well as injunctive and equitable relief and costs and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c).

282.     As a result of the actions of Valve, Lotto, Varga, Shuffle, Martin, Cassell, Skins Gambling Websites and OPSkins, Plaintiff has suffered losses in an amount to be determined at trial.

### COUNT IV
### FRAUD AND MISREPRESENTATION
#### (On Behalf of the National Class and Each State Subclass By All
#### Plaintiffs Against Lotto, Martin and Cassell)

283.     Plaintiffs repeat, reallege, and incorporate by reference each of the foregoing allegations as though fully set forth herein.

284.     Defendants Lotto, Martin and Cassell made material representations that were false, that they knew were false or were reckless as to their veracity, and that were made with the inducement for Plaintiff and the class to act upon.

285.     Specifically, and as detailed above, Defendants Lotto, Martin and Cassell represented that Plaintiffs and the public could win large sums of money through the gambling

COMPLAINT – CLASS ACTION FOR DAMAGES - 73

of digital skins on Lotto.

286.    Specifically, and as detailed above, Defendants Martin and Cassell willfully failed to disclose that they were the owners and agents of Lotto, and in fact represented to the world through YouTube videos that they were not the owners, and as such they were able to decide the outcome of the contests which they entered, even though they held themselves out to the public as being disinterested contestants in Lotto's gambling operation.

287.    Plaintiffs and the proposed class acted in reliance on the false, material representations and omissions made by Lotto, Cassell and Martin, which caused them injury.

288.    Plaintiffs and the proposed class would not have spent money on skins in response to the online videos published by Martin and Cassell if they had known of the ownership interest of Martin and Cassell in Lotto.

289.    Martin and Cassell also engaged in fraud by willfully operating and controlling an illegal and unregulated gambling enterprise, and promoting Lotto for use by U.S. teenagers and minors.

290.    All of the U.S. users of Lotto were engaged in gambling activity, but the actions of Martin and Cassell are even more reprehensible because they targeted teenagers and minors who were not able to give legal consent and were unsophisticated due to their age and lack of awareness about the consequences of gambling.

291.    As a result of Lotto, Cassell and Martin's fraudulent representations and omissions, Plaintiffs and the proposed class were induced to spend money on skins and gamble the skins on Lotto, which caused them to suffer financial injury, harm and damages as described in this Complaint.

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

## COUNT V
### FRAUD AND MISREPRESENTATION
**(On Behalf of the National Class and Each State Subclass By All Plaintiffs Against Varga and Shuffle)**

292.    Plaintiffs repeat, reallege, and incorporate by reference each of the foregoing allegations as though fully set forth herein.

293.    Defendants Shuffle and Varga made material representations that were false, that they knew were false or were reckless as to their veracity, and that were made with the inducement for Plaintiff and the class to act upon.

294.    Specifically, and as detailed above, Defendants Shuffle and Varga represented that Plaintiffs and the public could win large sums of money through the gambling of digital skins on Shuffle.

295.    Specifically, and as detailed above, Defendant Varga willfully failed to disclose that he was an owner and agent of Shuffle, and in fact represented to the world through YouTube videos that he was not the owner, and as such he was able to decide and predict the outcome of the contests which he entered, even though he held himself out to the public as being disinterested contestants in Shuffle's gambling operation.

296.    Plaintiffs and the proposed class acted in reliance on the false, material representations and omissions made by Varga and Shuffle, which caused them injury.

297.    Plaintiffs and the proposed class would not have spent money on skins in response to the online videos published by Shuffle and Varga if they had known of the ownership interest of Varga in Shuffle.

298.    Varga and Shuffle also engaged in fraud by willfully operating and controlling an illegal and unregulated gambling enterprise, and promoting Shuffle for use by U.S. teenagers and minors.

COMPLAINT – CLASS ACTION FOR DAMAGES - 75

299.     All of the U.S. users of Shuffle were engaged in gambling activity, but the actions of Varga and Shuffle are even more reprehensible because they targeted teenagers and minors who were not able to give legal consent and were unsophisticated due to their age and lack of awareness about the consequences of gambling.

300.     As a result of Varga and Shuffle's fraudulent representations and omissions, Plaintiffs and the proposed class were induced to spend money on skins and gamble the skins on Shuffle, which caused them to suffer financial injury, harm and damages as described in this Complaint.

## COUNT VI
## VIOLATIONS OF STATE CONSUMER PROTECTION LAWS
### (On Behalf of the National Class and State Subclasses Against All Defendants)

301.     Plaintiffs reallege and incorporate by reference the allegations contained in all preceding and subsequent paragraphs, as if fully set forth herein.

302.     Plaintiffs and members of the Class are consumers who used their credit or debit cards to purchase products from Defendants primarily for personal, family or household purposes.

303.     Defendants engaged in the conduct alleged in this Complaint in transactions intended to result, and which did result, in the sale of goods or services to consumers, including Plaintiffs and members of the proposed class.

304.     Defendants are engaged in, and its acts and omissions affect, trade and commerce. Defendants' acts, practices and omissions were done in the course of Defendants' business of marketing, offering for sale and selling goods and services throughout the United States, including in Washington.

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

305.     Defendants' conduct as describe in detail above constitutes unfair methods of competition and unfair, deceptive, fraudulent, unconscionable and/or unlawful acts or practices (collectively, "Deceptive Trade Practices"):

306.     By engaging in such Deceptive Trade Practices, Defendants have violated state consumer laws, including those that prohibit:

     a.  representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have;

     b.  representing that goods and services are of a particular standard, quality or grade, if they are of another;

     c.  omitting material facts regarding the goods and services sold;

     d.  engaging in any other conduct which similarly creates a likelihood of confusion or of misunderstanding;

     e.  unfair methods of competition;

     f.  unfair, deceptive, unconscionable, fraudulent and/or unlawful acts or practices; and/or

     g.  similar prohibitions under the state consumer laws identified below.

307.     As a direct result of Defendants' violation of state consumer laws, Plaintiffs and members of the proposed class suffered damages that include direct monetary losses, diminution in value of purchased good, specifically, Skins, and paying a higher price for Skins than otherwise would have been paid due to the inflated market caused by Skins gambling as described above.

308.     Defendants' Deceptive Trade Practices violate the following state consumer statutes:

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

a.  The Alabama Deceptive Trade Practices Act, Ala. Code § 8-19-5(5), (7) and (27), *et seq.*;

b.  The Arkansas Deceptive Trade Practices Act, Ark. Code Ann. §§ 4-88-107(a)(1)(10) and 4-88-108(1)(2), *et seq.*;

c.  The Arizona Consumer Fraud Act, A.R.S. § 44-1522;

d.  The California Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*, and the California Unfair Competition Law, Cal. Bus. and Prof. Code, § 17200, *et seq.*

e.  The Colorado Consumer Protection Act, Col. Rev. Stat. Ann. §§ 6-1-105(1)(b), (c), (e) and (g), *et seq.*;

f.  The Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110(b), *et seq.*;

g.  The District of Columbia Consumer Protection Act, D.C. Code §§ 28-3904(a), (d), (e), (f) and (r), *et seq.*;

h.  The Delaware Deceptive Trade Practices Act, Del. Code Ann. Title 6, § 2532(5) and (7), *et seq.*, and the Delaware Consumer Fraud Act, Del. Code Ann. Title 6 § 2513, *et seq.*;

i.  The Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.204(1), *et seq.*;

j.  The Georgia Fair Business Practices Act, Ga. Code Ann. §§ 10-1-393(a) and (b)(2), (5) and (7), *et seq.*;

k.  The Hawaii Deceptive Trade Practices Act, Haw. Rev. Stat. Ann. §§ 481A-3(a)(5), (7) and (12), *et seq.*; and the Hawaii Consumer Protection Act, Haw. Rev. Stat. Ann. § 480-2(a), *et seq.*;

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

l.   The Idaho Consumer Protection Act, Idaho Code §§ 48-603(5), (7), (17) and (18), *et seq.*; and Idaho Code § 48-603C, *et seq.*;

m.   The Iowa Consumer Fraud Act, I.C.A. § 714.16*et seq.*, and I.C.A. § § 714H.3 and 714H.5, *et seq.*; Consumer Plaintiffs have obtained the approval of the Iowa Attorney General for filing this class action lawsuit as provided under I.C.A § 714H.7;

n.   The Illinois Consumer Fraud and Deceptive Trade Practices Act, 815 Ill. Stat. § 505/2, *et seq.*, and the Illinois Uniform Deceptive Trades Practices Act, 815 Ill. Stat. § 510/2(a)(5), (7) and (12), *et seq.*;

o.   The Indiana Deceptive Consumer Sales Act, Ind. Code §§ 24-5-0.5-3(a) and (b)(1) and (2), *et seq.*;

p.   The Kansas Consumer Protection Act, Kan. Stat. §§ 50-626(a) and (b)(1)(A)(D) and (b)(3), *et seq.*;

q.   The Kentucky Consumer Protection Act, K.R.S. § 367.170(1) and (2), *et seq.*;

r.   The Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. § 51:1405(A), *et seq.*;

s.   The Massachusetts Consumer Protection Act, Ma. Gen. Laws Ann. Ch. 93A § 2(a), *et seq.*;

t.   The Maryland Consumer Protection Act, Md. Code Commercial Law, § 13-301(1) and (2)(i), and (iv) and (9)(i), *et seq*;

u.   The Maine Uniform Deceptive Trade Practices Act, 10 M.R.S.A. § §1212(1)(E) and (G), *et seq.*, and the Maine Unfair Trade Practices Act, 5 M.R.S.A. § 207, *et seq.*;

COMPLAINT – CLASS ACTION FOR DAMAGES - 79

v.  The Michigan Consumer Protection Act, M.C.P.L.A. § 445.903(1)(c)(e), (s) and (cc), *et seq.*;

w.  The Missouri Merchandising Practices Act, Mo. Ann. Stat. § 407.020(1), *et seq*;

x.  The Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.44, subd. 1(5), (7) and (13), *et seq.*, the Minnesota Consumer Fraud Act, Minn. Stat. § 325F.69, subd. 1, and Minn. Stat.§ 8.31, subd. 3(a);

y.  The Mississippi Consumer Protection Act, Miss. Code Ann. §§ 75-24-5(1),  (2)(e) and (g), *et seq.*;

z.  The Montana Unfair Trade Practices and Consumer Protection Act, MCA §§ 30-14-103, *et seq.*;

aa. The North Carolina Unfair Trade Practices Act N.C.G.S.A. § 75-1.1(a), *et seq.*;

bb. The North Dakota Unlawful Sales or Advertising Practices Act, N.D. Cent. Code § 51-15-02, *et seq.*;

cc. The Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59-1602, and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-302(a)(5) and (7), *et seq.*;

dd. The New Hampshire Consumer Protection Act, N.H. Rev. Stat. Ann. § 358-A:2(v) and (vii), *et seq.*;

ee. The New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-2, *et seq.*;

ff. The New Mexico Unfair Practices Act, N.M. Stat. Ann. §§ 57-12-2(D)(5)(7) and (14) and 57-12-3, *et seq.*;

gg. New York Business Law, N.Y. Gen. Bus. Law § 349(a);

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

hh. The Nevada Deceptive Trade Practices Act, Nev. Rev. Stat. Ann. § 598.0915(5) and (7), *et seq.*;

ii. The Ohio Consumer Sales Practices Act, Ohio Rev. Code Ann. § 1345.02(A) and (B)(1) and (2), *et seq.* Pursuant to Ohio Rev. Code Ann. § 1345.09(B) (which requires a prior determination of reasonable specificity that Defendant's alleged acts were in violation of Ohio Rev. Code Ann. §§ 1345.02 or 1345.03), Consumer Plaintiffs refer the Court to the following illustrative authorities: *Lump v. Best Door & Window, Inc.*, Nos. 8-01-09, 8-01-10, 2002 WL 462863, at *4-*5 (Ohio Ct. App. Mar. 27, 2002); *Baker v. Tri-County Harley Davidson, Inc.*, No. CA98-12-250, 1999 WL 1037262 (Ohio Ct. App. Nov. 15, 1999); *Miner v. Jayco, Inc.*, No. F-99-001, 1999 WL 651945, at *7-*8 (Ohio Ct. App. Aug. 27, 1999); *Crye v. Smolak*, No. 95APG10-1369, 674 N.E.2d 779 (Ohio Ct. App. 1996); *Daniels v. True*, 547 N.E.2d 425, 427 (Ohio Misc. 2d Dec. 9, 1988); *Brown v. Lyons*, 332 N.E.2d 380, 386 (Ohio Misc. Nov. 12, 1974). *See also Lump*, 2002 WL 462863, at *10-*11 (Walters, J., concurring ) ("it is clear that an omission may constitute a deceptive act or practice under" Ohio Rev. Code Ann. § 1345.02).

jj. The Oklahoma Consumer Protection Act, 15 Okl. Stat. Ann. § 753(5), (7) and (20), *et seq.*; and the Oklahoma Deceptive Trade Practices Act, 78 Okl. Stat. Ann. § 53(A)(5) and (7), *et seq*;

kk. The Oregon Unfair Trade Practices Act, Or. § 646.608(1)(e)(g) and (u), *et seq.*;

ll. The Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201-2(4)(v)(vii) and (xxi), and 201-3, *et seq.*;

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

mm.     The Rhode Island Deceptive Trade Practices Act, R.I. Gen. Laws § 6-13.1-1(6)(v), (vii), (xii), (xiii) and (xiv), *et seq*;

nn. The South Carolina Unfair Trade Practices Act, S.C. Code Ann. § 39-5-20(a), *et seq.*;

oo. The South Dakota Deceptive Trade Practices Act and Consumer Protection Act, S.D. Codified Laws § 37-24-6(1), *et seq.*;

pp. The Tennessee Consumer Protection Act, Tenn. Code Ann. §§ 47-18-104(a) and (b)(5) and (7);

qq. The Texas Deceptive Trade Practices- Consumer Protection Act, V.T.C.A., Bus. & C. § 17.46(a), (b)(5) and (7), *et seq.*;

rr.  The Utah Consumer Sales Practices Act, Utah Code Ann. §§ 13-11-4(1) and (2)(a) and (b);

ss.  The Virginia Consumer Protection Act, Va. Code Ann. § 59.1-200(A)(5)(6) and (14), *et seq.*;

tt.  The Vermont Consumer Fraud Act, 9 V.S.A. § 2453(a), *et seq.*;

uu. The Washington Consumer Protection Act, Wash. Rev. Code § 19.86.020, *et seq.*;

vv. The Wisconsin Deceptive Trade Practices Act, W.S.A. § 100.20(1), *et seq.*;

ww.     The West Virginia Consumer Credit and Protection Act, W.V.A. Code § 46A-6-104, *et seq.*; and

xx. The Wyoming Consumer Protection Act, Wyo. Stat. Ann. § 40-12-105(a), (i), (iii) and (xv), *et seq*.

309.    As a result of Defendants' violations, Plaintiffs and members of the class are entitled to injunctive relief, including but not limited to:

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

a. Ordering that Defendant Valve freeze all accounts of third-party gambling websites and return all Skins to users' accounts;

b. Ordering Defendant Valve to prevent Skins Gambling Websites and OPSkins from using "bots" and other automated accounts in violation of the Subscription Agreement.

310.    Due to Defendants' Deceptive Trade Practices, Plaintiffs and the class members are entitled to relief, including restitution of the costs associated with the purchase of Skins, losses on Skins Gambling Websites, disgorgement of all profits accruing to Defendants because of their Deceptive Trade Practices, attorneys' fees and costs, declaratory relief, and a permanent injunction enjoining Defendants from their Deceptive Trade Practices.

311.    Plaintiffs bring this action on behalf of themselves and all similarly situated persons in the proposed separate statewide for the relief requested and for the public benefit in order to promote the public interests in the provision of truthful, non-deceptive information to allow consumers to make informed purchasing decisions and to protect Plaintiffs and the proposed class members and the public from Defendants' illegal gambling scheme that has created an unregulated, international online gambling ring aimed at teenagers, unfair methods of competition and unfair, deceptive, fraudulent, unconscionable and unlawful practices. Defendants' wrongful conduct as alleged in this Complaint has had widespread impact on the public at large, including causing injury and ascertainable losses of money or property to up to persons across the United States.

312.    Plaintiffs have provided notice of this action and a copy of this Complaint to the appropriate Attorneys General pursuant to state consumer laws, providing for such notice, including Conn. Gen. Stat. § 42-110g(c); 815 Ill. Stat. § 505/6; I.C.A § 714H.7; Kan. Stat. § 50-

634(g); N.J. Stat. Ann. § 56:8-20; Ore. Rev. Stat. Ann. § 646.68(s); and Wash. Rev. Code § 19.86.095.

## COUNT VII
**VIOLATION OF THE NEW JERSEY TRUTH IN CONSUMER CONTRACT, WARRANTY AND NOTICE ACT ("TCCWNA"), N.J.S.A. 56:12-16**
**(On Behalf of the New Jersey Subclass Against All Defendants)**

313.   N.J.S.A. 56:12-16, in relevant part provides "No consumer contract, notice or sign shall state that any of its provisions is or may be void, unenforceable or inapplicable in some jurisdictions without specifying which provisions are or are not void, unenforceable or inapplicable within the State of New Jersey".

314.   As aforesaid, Defendant Valve displays, offers and enters into "Subscriber Agreements"[72] with consumers.

315.   Paragraph 7 of Defendant's Subscriber agreement provides in relevant part:

> THIS SECTION DOES NOT REDUCE YOUR MANDATORY CONSUMER RIGHTS UNDER THE LAWS OF YOUR LOCAL JURISDICTION. IN PARTICULAR, SECTIONS 7.A, B, AND C DO NOT APPLY TO EU SUBSCRIBERS.
>
> FOR NEW ZEALAND SUBSCRIBERS, THIS SECTION 7 DOES NOT EXCLUDE, RESTRICT OR MODIFY THE APPLICATION OF ANY RIGHT OR REMEDY THAT CANNOT BE SO EXCLUDED, RESTRICTED OR MODIFIED INCLUDING THOSE CONFERRED BY THE NEW ZEALAND CONSUMER GUARANTEES ACT 1993. UNDER THIS ACT ARE GUARANTEES WHICH INCLUDE THAT GOODS AND SERVICES ARE OF ACCEPTABLE QUALITY. IF THIS GUARANTEE IS NOT MET THERE ARE ENTITLEMENTS TO HAVE THE SOFTWARE REMEDIED (WHICH MAY INCLUDE REPAIR, REPLACEMENT OR REFUND). IF A REMEDY CANNOT BE PROVIDED OR THE FAILURE IS OF A SUBSTANTIAL CHARACTER, THE ACT PROVIDES FOR A REFUND.

316.   Valve's subscriber agreement further provides, at paragraph 7B, entitled "LIMITATION OF LIABILITY":

---

[72] Defendant's current subscriber agreement is available at: http://store.steampowered.com/subscriber_agreement/ (last accessed July 5, 2016)

COMPLAINT – CLASS ACTION FOR DAMAGES - 84

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

> BECAUSE SOME STATES OR JURISDICTIONS DO NOT ALLOW THE EXCLUSION OR THE LIMITATION OF LIABILITY FOR CONSEQUENTIAL OR INCIDENTAL DAMAGES, IN SUCH STATES OR JURISDICTIONS, EACH OF VALVE, VALVE EU, THEIR LICENSORS, AND THEIR AFFILIATES' LIABILITY SHALL BE LIMITED TO THE FULL EXTENT PERMITTED BY LAW.

317.    Valve's subscriber agreement violates N.J.S.A. 56:12-16 with each of the quoted provisions by failing to specify which provisions of the agreement are or are not void or unenforceable or inapplicable within the State of New Jersey.

318.    Lotto also has a notice[73] on its website that violates N.J.S.A. 56:12-16 by failing to specify which provisions of the notice are or are not void or unenforceable or inapplicable within the State of New Jersey, as follows:

> YOUR USE OF THE WEBSITE, ITS CONTENT AND ANY SERVICES OR ITEMS OBTAINED THROUGH THE WEBSITE IS AT YOUR OWN RISK. THE WEBSITE, ITS CONTENT AND ANY SERVICES OR ITEMS OBTAINED THROUGH THE WEBSITE ARE PROVIDED ON AN "AS IS" AND "AS AVAILABLE" BASIS, WITHOUT ANY WARRANTIES OF ANY KIND, EITHER EXPRESS OR IMPLIED. NEITHER THE COMPANY NOR ANY PERSON ASSOCIATED WITH THE COMPANY MAKES ANY WARRANTY OR REPRESENTATION WITH RESPECT TO THE COMPLETENESS, SECURITY, RELIABILITY, QUALITY, ACCURACY OR AVAILABILITY OF THE WEBSITE. WITHOUT LIMITING THE FOREGOING, NEITHER THE COMPANY NOR ANYONE ASSOCIATED WITH THE COMPANY REPRESENTS OR WARRANTS THAT THE WEBSITE, ITS CONTENT OR ANY SERVICES OR ITEMS OBTAINED THROUGH THE WEBSITE WILL BE ACCURATE, RELIABLE, ERROR-FREE OR UNINTERRUPTED, THAT DEFECTS WILL BE CORRECTED, THAT OUR SITE OR THE SERVER THAT MAKES IT AVAILABLE ARE FREE OF VIRUSES OR OTHER HARMFUL COMPONENTS OR THAT THE WEBSITE OR ANY SERVICES OR ITEMS OBTAINED THROUGH THE WEBSITE WILL OTHERWISE MEET YOUR NEEDS OR EXPECTATIONS. THE COMPANY HEREBY DISCLAIMS ALL WARRANTIES OF ANY KIND, WHETHER EXPRESS OR IMPLIED, STATUTORY OR OTHERWISE, INCLUDING BUT NOT LIMITED TO ANY WARRANTIES OF MERCHANTABILITY, NON-INFRINGEMENT AND FITNESS FOR PARTICULAR PURPOSE. THE FOREGOING DOES NOT AFFECT ANY WARRANTIES WHICH CANNOT BE EXCLUDED OR LIMITED UNDER APPLICABLE LAW … IN NO EVENT WILL THE COMPANY, ITS AFFILIATES OR THEIR LICENSORS, SERVICE PROVIDERS, EMPLOYEES, AGENTS, OFFICERS OR DIRECTORS BE LIABLE FOR DAMAGES OF ANY KIND, UNDER ANY LEGAL THEORY, ARISING OUT OF OR IN CONNECTION WITH YOUR USE, OR INABILITY TO USE, THE WEBSITE, ANY WEBSITES LINKED TO IT, ANY CONTENT ON THE WEBSITE OR SUCH OTHER WEBSITES OR ANY SERVICES OR ITEMS OBTAINED THROUGH THE WEBSITE OR SUCH OTHER WEBSITES, INCLUDING ANY DIRECT, INDIRECT, SPECIAL, INCIDENTAL, CONSEQUENTIAL OR PUNITIVE DAMAGES, INCLUDING BUT NOT LIMITED TO, PERSONAL INJURY, PAIN AND

---

[73] Lotto's Consumer Terms of Use and Notice are available at https://csgolotto.com/terms-of-use.

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

SUFFERING, EMOTIONAL DISTRESS, LOSS OF REVENUE, LOSS OF PROFITS, LOSS OF BUSINESS OR ANTICIPATED SAVINGS, LOSS OF USE, LOSS OF GOODWILL, LOSS OF DATA, AND WHETHER CAUSED BY TORT (INCLUDING NEGLIGENCE), BREACH OF CONTRACT OR OTHERWISE, EVEN IF FORESEEABLE.THE FOREGOING DOES NOT AFFECT ANY LIABILITY WHICH CANNOT BE EXCLUDED OR LIMITED UNDER APPLICABLE LAW.

319.    As a result of Defendant Valve's and Lotto's violation of N.J.S.A. 56:12-17, Plaintiff and all New Jersey Subclass members are entitled to a civil penalty of "not less than $100.00 or for or for actual damages, or both at the election of the consumer, together with reasonable attorney's fees and court costs."

## COUNT VIII
### VIOLATION OF THE NEW JERSEY TRUTH IN CONSUMER CONTRACT, WARRANTY AND NOTICE ACT ("TCCWNA"), N.J.S.A. 56:12-15
### (On Behalf of the New Jersey Subclass Against All Defendants)

320.    The TCCWNA provides in relevant part as follows:

> No seller, lessor, creditor, lender or bailee shall in the course of his business offer to any consumer or prospective consumer or enter into any written consumer contract or give or display any written consumer warranty, notice or sign after the effective date of this act which includes any provision that violates any clearly established legal right of a consumer or responsibility of a seller, lessor, creditor, lender or bailee as established by State or Federal law at the time the offer is made or the consumer contract is signed or the warranty, notice or sign is given or displayed. Consumer means any individual who buys, leases, borrows, or bails any money, property or service which is primarily for personal, family or household purposes.

N.J.S.A. 56:12-15.

321.    The TCCWNA was designed to prevent merchants from imposing on New Jersey consumers contract provisions whose mere inclusion in a consumer contract would violate the rights of consumers and deceive them into thinking such illegal provisions were valid, and thereby, they would not even try to enforce their rights:

COMPLAINT – CLASS ACTION FOR DAMAGES - 86

1
2
3
4

> Far too many consumer contracts, warranties, notices and signs, contain provisions which clearly violate the rights of consumers. Even though these provisions are legally invalid or unenforceable, their very inclusion in a contract, warranty, notice or sign deceives a consumer into thinking that they are enforceable and for this reason the consumer often fails to enforce his rights.

5   *See* Sponsor's Statement, Statement to Assembly Bill No. 1660 (May 1, 1980).

6   322.   Section 7B of the Subscriber agreement provides:

7
8
9
10
11
12
13
14
15
16
17
18
19

> TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, NEITHER VALVE, VALVE EU, THEIR LICENSORS, NOR THEIR AFFILIATES, NOR ANY OF VALVE'S OR VALVE EU'S SERVICE PROVIDERS, SHALL BE LIABLE IN ANY WAY FOR LOSS OR DAMAGE OF ANY KIND RESULTING FROM THE USE OR INABILITY TO USE STEAM, YOUR ACCOUNT, YOUR SUBSCRIPTIONS AND THE CONTENT AND SERVICES INCLUDING, BUT NOT LIMITED TO, LOSS OF GOODWILL, WORK STOPPAGE, COMPUTER FAILURE OR MALFUNCTION, OR ANY AND ALL OTHER COMMERCIAL DAMAGES OR LOSSES. IN NO EVENT WILL VALVE BE LIABLE FOR ANY INDIRECT, INCIDENTAL, CONSEQUENTIAL, SPECIAL, PUNITIVE OR EXEMPLARY DAMAGES, OR ANY OTHER DAMAGES ARISING OUT OF OR IN ANY WAY CONNECTED WITH STEAM, THE CONTENT AND SERVICES, THE SUBSCRIPTIONS, AND ANY INFORMATION AVAILABLE IN CONNECTION THEREWITH, OR THE DELAY OR INABILITY TO USE THE CONTENT AND SERVICES, SUBSCRIPTIONS OR ANY INFORMATION, EVEN IN THE EVENT OF VALVE'S, VALVE EU'S OR THEIR AFFILIATES' FAULT, TORT (INCLUDING NEGLIGENCE), STRICT LIABILITY, OR BREACH OF VALVE'S OR VALVE EU'S WARRANTY AND EVEN IF IT HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. THESE LIMITATIONS AND LIABILITY EXCLUSIONS APPLY EVEN IF ANY REMEDY FAILS TO PROVIDE ADEQUATE RECOMPENSE.

20
21
22
23
24
25

323.   Said Agreement violates the clearly established legal rights to pursue claims under the NJ CFA and TCCWNA, and the rights of successful plaintiffs to punitive damages under those acts, in the form of treble damages and/or a civil penalty.  It further purports to violate the clearly established legal rights of consumers to maintain suits for negligence, intentional harms inflicted by Defendants, breach of warranty, and/or strict liability.

26

324.   Lotto's published Terms of Use, described above and incorporated by reference,

COMPLAINT – CLASS ACTION FOR DAMAGES - 87

similarly violate the clearly established legal rights to pursue claims under the NJ CFA and TCCWNA, and the rights of successful plaintiffs to punitive damages under those acts, in the form of treble damages and/or a civil penalty.  It further purports to violate the clearly established legal rights of consumers to maintain suits for negligence, intentional harms inflicted by Defendants, breach of warranty, and/or strict liability.

325.    As a result of the violations by Valve and Lotto of N.J.S.A. 56:12-15, Plaintiff and New Jersey Subclass members are entitled to a civil penalty of "not less than $100.00 or for actual damages, or both at the election of the consumer, together with reasonable attorney's fees and court costs."

**COUNT IX**
**NEGLIGENCE**
**(On Behalf of the National Class and Each State Subclass By All Plaintiffs Against Valve)**

326.    Plaintiffs reallege and incorporate by reference the allegations contained in all preceding and subsequent paragraphs, as if fully set forth herein.

327.    Defendant Valve at all times relevant to this Complaint owed Plaintiffs and the proposed class as users and paying customers a duty to use reasonable care to provide true, reliable, and safe gaming experience.

328.    Valve breached its duties to Plaintiffs and the proposed class by creating, allowing and maintaining a system of Skins gambling that resulted in unregulated, third-party websites harming Plaintiffs and the classes through rigged gambling websites.

329.    As a direct and proximate result of Valve's negligence, Plaintiffs and the proposed class suffered financial losses through the unregulated, rigged, unfair and unsafe Skins Gambling Websites.

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

**COUNT X**
**DECLARATORY RELIEF**
**(On Behalf of the National Class and Each State Subclass By All Plaintiffs Against Valve)**

330.    Plaintiffs reallege and incorporate by reference the allegations contained in all preceding and subsequent paragraphs, as if fully set forth herein.

331.    Defendant Valve's Subscriber Agreement, as described above, contains terms that seek to eliminate Valve's liability for any and all claims, allow Valve to modify the Subscriber Agreement unilaterally, eliminates the rights of consumers to protect their rights in Court, and otherwise contain complicated legal language over its seventeen pages, twelve sections and numerous subsections.

332.    This Subscriber Agreement purports to be a binding contract, but requires that users check a box indicating that they are thirteen (13) years or older, meaning Valve specifically seeks to contract with minors.

333.    Any agreement set forth in the Subscriber Agreement is illusory because it does not require Valve to do anything in exchange for the user to use Valve's website.

334.    The provisions of the Subscriber Agreement are complicated, ambiguous, unfairly one-sided towards Valve, the drafter, and are otherwise difficult for the average consumer, especially teenagers, to understand.

335.    Plaintiffs, as minor children and those who have only recently reached the age of majority, by and through undersigned counsel, hereby disaffirm any waivers of rights, limitations on liability, dispute resolution, and/or the Subscriber Agreement as a whole to the extent Plaintiffs have not received any benefit from the Subscriber Agreement.

336.    Plaintiffs paid consideration for the goods and services provided by Valve and used their accounts to participate in Valve's online marketplace, and the Subscriber Agreement

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

and its terms were not material to that basic transaction and did not provide any benefit to Plaintiffs.

337.    Plaintiffs who continue to play games on Valve's servers do so because they have paid cash consideration to Valve for the right to own and use Valve's software, and do not adopt, affirm or otherwise assent to the Subscriber Agreement by continuing to use Valve's marketplace or play Valve's games for which Plaintiffs and the proposed class have already paid.

338.    Plaintiffs seek declaratory relief from the Court that the Subscriber Agreement is invalid as to all minors under the age of 18 and all Valve users under the age of 21 who first entered into the Subscriber Agreement when they were under the age of 18, and specifically any clause in which Plaintiffs and/or other customers of Valve purportedly waived their rights to proceed in Court or on a class wide basis, and/or waived Valve's liability.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs and members of the proposed class pray for relief and judgment against Defendants, as follows:

   a.    For an order certifying the proposed classes, appointing Plaintiffs and their counsel to represent the proposed class and notice to the proposed classes to be paid by Defendants;

   b.    For damages suffered by Plaintiffs and members of the proposed class;

   c.    For restitution to Plaintiff and the proposed class of all monies wrongfully obtained by Defendants;

   d.    For injunctive relief requiring Defendants to cease and desist from engaging in the unlawful, unfair, and/or deceptive practices alleged in the Complaint;

   e.    An order awarding declaratory relief, retrospective and prospective injunctive relief as permitted by law or equity, including enjoining Defendants from continuing the unlawful practices as set forth herein, and injunctive relief to remedy Defendants' past conduct;

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

1

f.     For Plaintiffs' reasonable attorneys' fees, as permitted by law;

2

g.     For Plaintiffs' costs incurred;

3

4      h.     For pre-judgment and post-judgment interest at the maximum allowable
              rate on any amounts awarded; and

5

6      i.     For such other and further relief that this Court deems just and proper
              under equity or law, including the award of punitive damages.

7

8      DATED this 4th day of August, 2016.

9                                              By: /s/ Kim D. Stephens
                                               By: /s/ Jason T. Dennett
10                                             Kim D. Stephens, WSBA #11984
                                               Email: KStephens@tousley.com
11                                             Jason T. Dennett, WSBA #30686
                                               Email:  jdennett@tousley.com
12                                             **TOUSLEY BRAIN STEPHENS PLLC**
                                               1700 Seventh Avenue, Suite 2200
13                                             Seattle, WA 98101
                                               Tel:  (206) 682-5600
14                                             Fax: (206) 682-2992

15                                             Jasper D. Ward IV
                                               Alex C. Davis
16                                             Patrick Walsh
                                               **JONES WARD PLC**
17                                             Marion E. Taylor Building
                                               312 S. Fourth Street, Sixth Floor
18                                             Louisville, Kentucky 40202
                                               Tel. (502) 882-6000
19                                             Fax (502) 587-2007
                                               jasper@jonesward.com
20                                             alex@jonesward.com
                                               patrick@jonesward.com
21

22

23

24

25

26

COMPLAINT – CLASS ACTION FOR DAMAGES - 91

1                    Paul C. Whalen (PW1300)

Paul C. Whalen (PW1300)
**LAW OFFICE OF PAUL C. WHALEN, P.C.**
768 Plandome Road
Manhasset, NY 11030
Tel. (516) 426-6870
Fax (212) 658-9685
pcwhalen@gmail.com

D. Todd Mathews, 163104
**Gori Julian & Associates, P.C.**
Attorneys at Law
156 N. Main St.
Edwardsville, IL  62025
Tel. (618) 659-9833
Fax (618) 659-9834
todd@gorijulianlaw.com

Neal L. Moskow, Esq.
Fed. Bar. No. CT 04516
**Ury & Moskow, L.L.C.**
883 Black Rock Turnpike
Fairfield, CT 06825
Telephone (203) 610-6393
Facsimile: (203) 610-6399
neal@urymoskow.com

John A. Yanchunis, FBN: 0324681
**MORGAN & MORGAN**
COMPLEX LITIGATION GROUP
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
jyanchunis@forthepeople.com

Kevin S. Hannon
**The Hannon Law Firm, LLC**
1641 Downing Street
Denver, Colorado 80218
303-861-8800
khannon@hannonlaw.com
www.hannonlaw.com

Melissa R. Emert
Patrick K. Slyne
**STULL, STULL & BRODY**
6 East 45th Street
New York, NY 10017
Tel. (212) 687-7230
Fax (212) 490-2022
memert@ssbny.com
pkslyne@ssbny.com

COMPLAINT – CLASS ACTION FOR DAMAGES - 92

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

Corey D. Sullivan
**SULLIVAN LAW LLC**
1814 E Eagle Bay Drive
Bloomington, IN 47401
corey@druginjurylegal.com
Phone: (314) 971-9353

Casey Flynn
**Law Office of Francis J. Flynn, Jr.**
6220 West Third Street, #415
Los Angeles, CA 90036
francisflynn@gmail.com

Andrew P. Bell
Alfred M. Anthony
James A. Barry
**LOCKS LAW FIRM LLC**
801 N. Kings Highway
Cherry Hill, NJ 08034
Tel: (856)663-8200
Fax: (856)661-8400
abell@lockslaw.com
aanthony@lockslaw.com
jbarry@lockslaw.com

JEAN SUTTON MARTIN
North Carolina Bar Number 25703
**Law Office of Jean Sutton Martin PLLC**
2018 Eastwood Road Suite 225
Wilmington, NC 28403
Telephone: (910) 292-6676
Email: jean@jsmlawoffice.com

Diandra "Fu" Debrosse Zimmermann
**ZARZAUR MUJUMDAR DEBROSSE**
2332 2nd Avenue North
Birmingham, Alabama 35203
Telephone: (205) 983-7985
fuli@zarzaur.com
www.zarzaur.com

Anthony S. Bruning
Anthony S. Bruning Jr.
Ryan Bruning
**THE BRUNING LAW FIRM**
555 Washington Ave, Suite 600
St. Louis, MO 63101
Tel: (314) 735-8100
Fax: (314) 735-8020
tony@bruninglegal.com
aj@bruninglegal.com
ryan@bruninglegal.com

COMPLAINT – CLASS ACTION FOR DAMAGES - 93

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Richard S. Cornfeld
**LAW OFFICE OF RICHARD S. CORNFELD**
1010 Market Street, Suite 1720
St. Louis, MO 63101
Tel: (314) 241-5799
Fax: (314) 241-5788
rcornfeld@cornfeldlegal.com

Robert Ahdoot
Tina Wolfson
**AHDOOT & WOLFSON, PC**
1016 Palm Avenue
West Hollywood, California 90069
Tel: (310) 474-9111
Fax: (310) 474-8585
rahdoot@ahdootwolfson.com
twolfson@ahdootwolfson.com
*Attorneys for Plaintiffs*

6225/001/339728.1

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992