THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MICHAEL JOHN MCLEOD, et al.,

                Plaintiffs,

    v.

VALVE CORPORATION, et al.,

                Defendants.

CASE NO. C16-1227-JCC

ORDER GRANTING
DEFENDANTS' MOTION TO
DISMISS

This matter comes before the Court on Defendants CSGO Lotto, Inc. and Trevor A. Martin's motion to dismiss the first amended complaint (Dkt. No. 19). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS the motion for the reasons explained herein.

## I.    BACKGROUND

Plaintiffs allege that Defendant Valve Corporation, through its video game *Counter Strike Global Offensive* (CSGO) "allowed an illegal online gambling market" through "its Steam platform." (Dkt. No. 11 at ¶¶ 3, 21.) CSGO is a popular online video game that is the subject of weekly online gaming matches that are broadcast on television. (*Id.* at ¶4.) Steam is Valve's online marketplace where players can "list items for sale, buy games, buy items, [and] deposit money into their 'Steam Wallet.'" (*Id.* at ¶¶ 6, 89.)

CSGO players can purchase CSGO Skins (Skins), virtual weapons with different

"textures" that can be used during gameplay, through Steam. (*Id.* at ¶6.) Skins can then be "traded and used as collateral for bets placed on Skins Gambling Websites through linked Steam accounts." (*Id.*) Plaintiffs contend that Skins are like casino chips that have monetary value outside the game itself because of the ability to turn Skins directly into cash through these third-party gambling sites. (*Id.*) All Skins are "put into a large pool, and one winner is chosen at random to take all of the Skins." (*Id.* at ¶ 141.) These Skins can then be sold and converted into cash. (*Id.* at ¶ 142.) Valve allegedly takes a 15% fee on the sale of each Skin through its Steam marketplace and Skins allegedly "never actually leave Valve's servers." (*Id.* at ¶¶ 6, 16.)

Plaintiffs allege that "Valve is aware that rigged third-party sites are taking money from Valve's teenage customers." (*Id.* at ¶ 114.) Plaintiffs also allege that Mr. Trevor Martin, a defendant and owner of CSGO Lotto, "actively promote[s] Lotto as a gambling service" through his YouTube channel, which "generates excitement." (*Id.* at ¶¶ 13, 26, 153.)  Plaintiffs state that Mr. Martin posted YouTube videos showing him "winning large amounts of real money—not Skins—by gambling." (*Id.* at ¶ 156.) Plaintiffs contend that Mr. Martin's alleged failure to disclose that he was a partial owner of CSGO Lotto means that he "rigged the results" of games played on CSGO Lotto. (*Id.* at ¶¶ 155–64, 260, 261.) With respect to damages, Plaintiffs allege that they lost the value of their Skins, but they "knew" they could "cash out" the value of their Skins "for real money prior to losing them while gambling." (*Id.* at ¶¶ 28–79, 231, 290, 300, 316.)

On August 16, 2016, Plaintiffs filed an amended class action complaint. (Dkt. No. 11.) The Plaintiffs allege their class action is proper under Federal Rule of Civil Procedure 23. (*Id.* at ¶ 211.) The class includes individuals "who (1) purchased Skins and/or (2) are parents/guardians of a minor child who has purchased Skins." (*Id.* at ¶ 221.) The amended complaint alleges ten different statutory and common law violations, some including dozens of individual state law violations, but contains only one federal claim: violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962. (*Id.* at 66.) Plaintiffs do not allege the

1   amount of damages sought. On September 1, 2016, Defendants CSGO Lotto and Mr. Martin

2   filed a motion to dismiss the first amended complaint pursuant to Federal Rule of Civil

3   Procedure 12(b) for lack of personal jurisdiction, lack of subject matter jurisdiction, and failure

4   to state a claim. (Dkt. No. 19.)

5   **II.     DISCUSSION**

6          **A.      Federal Rule of Civil Procedure 12(b)(6) Standard**

7              A defendant may move for dismissal when a plaintiff "fails to state a claim upon which

8   relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must

9   contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its

10  face. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). A claim has facial plausibility when the

11  plaintiff pleads factual content that allows the court to draw the reasonable inference that the

12  defendant is liable for the misconduct alleged. *Id.* at 678. Although the Court must accept as true

13  a complaint's well-pleaded facts, conclusory allegations of law and unwarranted inferences will

14  not defeat an otherwise proper Rule 12(b)(6) motion. *Vasquez v. L.A. County,* 487 F.3d 1246,

15  1249 (9th Cir. 2007); *Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir. 2001). The

16  plaintiff is obligated to provide grounds for his entitlement to relief that amount to more than

17  labels and conclusions or a formulaic recitation of the elements of a cause of action. *Bell Atl.*

18  *Corp. v. Twombly*, 550 U.S. 544, 545 (2007). "[T]he pleading standard Rule 8 announces does

19  not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-

20  unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A dismissal under Federal Rule of

21  Civil Procedure 12(b)(6) "can [also] be based on the lack of a cognizable legal theory." *Balistreri*

22  *v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

23          ///

24          ///

25

26

ORDER GRANTING DEFENDANTS' MOTION
TO DISMISS
PAGE - 3

**B.    RICO Standing**[1]

RICO provides a private cause of action for "[a]ny person injured in his business or property by reason of a violation of [18 U.S.C. § 1962]." 18 U.S.C. § 1964(c). "The elements of a civil RICO claim are as follows: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to plaintiff's business or property." *United Bhd. of Carpenters & Joiners of Am. v. Bldg. & Const. Trades Dep't, AFL-CIO*, 770 F.3d 834, 837 (9th Cir. 2014) (quoting *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005)). The fifth element is RICO's "standing" requirement. *See Steele v. Hosp. Corp. of Am.*, 36 F.3d 69, 70 (9th Cir.1994). The statutory standing requirement ensures that "RICO is not expanded to provide a 'federal cause of action and treble damages to every tort plaintiff.'" *Id.* (quoting *Oscar v. Univ. Students Co-op Ass'n*, 965 F.2d 783, 786 (9th Cir.) (en banc)). To prove injury to business or property, "plaintiffs must show proof of concrete financial loss, and not mere injury to a valuable intangible property interest." *Chaset v. Fleer/Skybox Int'l, LP*, 300 F.3d 1083, 1086–87 (9th Cir. 2002).

Defendants allege that Plaintiffs have not met the RICO standing requirement because "plaintiffs who enter into transactions knowing that there are a wide range of possible outcomes cannot state a RICO claim when they receive less than favorable outcomes within that range." (Dkt. No. 19 at 16) (collecting cases). Although there does not seem to be a case dealing with this issue in the competitive video gaming context, the case law in the Ninth Circuit is clear: gambling losses are not sufficient injury to business or property for RICO standing. *See Chaset*, 300 F.3d at 1087; *Rodriguez v. Topps Co.*, 104 F. Supp. 2d 1224, 1226 (S.D. Cal. 2000) (affirmed by *Chaset*). *See also Adell v. Macon Cty. Greyhound Park, Inc.*, 758 F. Supp. 2d 1126, 1237 (M.D. Ala. 2011). Plaintiffs attempt to defeat this motion to dismiss and the established

---

[1] Defendants characterize their argument that Plaintiffs lack RICO standing as a lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) because if the RICO claims fails, the Court no longer has federal question jurisdiction. (Dkt. No. 19 at 15–19.) However, RICO standing is an element of a RICO claim and the Court will analyze Plaintiffs' RICO standing allegations under Federal Rule of Civil Procedure 12(b)(6).

case law that gambling losses are not RICO injury with three arguments: (1) their additional

allegations of state law gambling and common law violations are enough to allege injury (Dkt.

No. 31 at 25); (2) their additional allegations of fraud or dishonesty with respect to Defendants'

allegedly illegal gambling operation are enough to allege injury (Dkt. No. 31 at 26); and

(3) the case law relied on by Defendants is distinguishable (*id.*).  As discussed below, all three

arguments fail.

### 1.   State Law and Common Law Violations

First, Plaintiffs erroneously cite *Schwartz v. Upper Deck Co.*, 104 F. Supp. 2d 1228

(S.D. Cal. 2000), for the proposition that "[w]hile 'the act of gambling *per se* is not sufficient to

show an injury to one's business or property under RICO,' economic harm that constitutes injury

under § 1964(c) may still be shown through additional allegations." (Dkt. No. 31 at 25–26)

(citing *Schwartz*, 104 F. Supp. 2d at 1230–31). Plaintiffs go on to claim that their state law

gambling claims, among others, are sufficient for RICO injury. (*Id.*) However, the court in

*Schwartz* was explicit that "[t]he right to redress that Plaintiffs may enjoy under California state

law to sue individually for their gambling losses does not equate with the standing requirement

of [RICO]." *Schwartz*, 104 F. Supp. 2d at 1230. Therefore, this argument fails as a misstatement

of the law.

### 2.   Additional Allegations of Fraud or Dishonesty

Second, Plaintiffs cite *Rodriguez* for the proposition that additional allegations of fraud or

dishonesty can establish RICO injury even when defendants are involved in gambling activity.

(Dkt. No. 31 at 26) (citing *Rodriquez*, 104 F. Supp. 2d at 1227). Plaintiffs contend that Mr.

Martin's alleged failure to disclose that he was a partial owner of CSGO Lotto means that he

"rigged the results" of games played on CSGO Lotto. (Dkt. No.11 at ¶¶ 155–64, 260, 261.)

Plaintiffs contend they were "deprived of the right to honest services" as a result. (Dkt. No. 31 at

26–27.) First, any alleged non-disclosure as a deprivation of honest services, as is the case here,

does not support a concrete injury for RICO standing. *See Ove v. Gwinn*, 264 F.3d 817, 825 (9th

1    Cir. 2001). Moreover, these allegations are not sufficient to state injury because, as in *Rodriguez*,

2    "[t]here is no allegation that Defendant[s have] engaged in any sort of fraudulent or dishonest

3    conduct such as misrepresenting to purchasers the odds of winning." *Rodriquez*, 104 F. Supp. 2d

4    at 1227. Plaintiffs allege that all Skins are "put into a large pool, and one winner is chosen at

5    random to take all of the Skins." (Dkt. No. 11 at ¶ 141.) This is an explicit statement that the

6    results were random, not rigged, and therefore fails to demonstrate that Defendants have engaged

7    in fraudulent conduct.

8           Moreover, *Adell*, although not binding on this Court, is persuasive authority. In *Adell*, the

9    plaintiffs sought to recover gambling losses they incurred when they lost wagers on allegedly

10   illegal electronic bingo machines. *Adell*, 785 F. Supp. 2d at 1237. To avoid dismissal, the

11   plaintiffs claimed that their complaint alleged more than just illegal gambling losses because

12   they claimed that "Defendants' illegal gambling operation is founded on fraudulent, dishonest,

13   rigged and manipulated games and gambling devices." *Id.* at 1239. The court found that the

14   hypothetical could not be extended to plaintiffs' facts because they failed plead any facts that

15   actually connected the alleged rigging of any electronic bingo machine to any injury suffered by

16   plaintiffs. *Id.* Here, Plaintiffs contend that Martin's alleged failure to disclose that he was a

17   partial owner of CSGO Lotto means that he "rigged the results" of games played on CSGO

18   Lotto. (Dkt. No. 11 at ¶¶ 155–64, 260, 261.) However, as in *Adell*, Plaintiffs fail to plead any

19   facts that actually connect the alleged rigging of the gambling to any injury suffered by

20   Plaintiffs. Therefore, this argument fails, as well.

21           3.   <u>Case Law</u>

22           Although Defendants cite many cases on point from other circuits, the cited case *Chaset*

23   is Ninth Circuit law and binding precedent on this Court. Plaintiffs contend that *Chaset* is

24   distinguishable because "there were no allegations and no findings that the activity by the

25   [d]efendants was not 'run fairly and honestly' or that plaintiffs had suffered injury from 'unfair

26   and dishonest conduct.'" (Dkt. No. 31 at 26.) *Chaset* involved plaintiffs who had purchased

1    trading card packages with a chance to obtain valuable "chase" cards. *Chaset*, 300 F.3d at

2    1085–86. The chase cards were randomly inserted in a percentage of packages, with the odds of

3    winning a chase card typically advertised on the package. *Id.* at 1086. The plaintiffs alleged that

4    the "random inclusion of limited edition cards in packages of otherwise randomly assorted sports

5    and entertainment trading cards constituted unlawful gambling in violation of RICO." *Id.* The

6    Ninth Circuit affirmed the district court's Federal Rule of Civil Procedure 12(b)(6) dismissal

7    stating that plaintiffs' "disappointment upon not finding [a chase] card in the package is not an

8    injury to property." *Id.* at 1087.

9            This Court concluded above that Plaintiffs' allegations do not support claims of dishonest

10   conduct. *Chaset*'s lack of discussion on this issue does not mean it is not directly on point, as

11   Plaintiffs contend. Although *Chaset* does not deal with the competitive video gaming matters

12   involved in this case, the holding is clear: a disappointing gambling loss after receiving what was

13   paid for is not injury to property sufficient for RICO standing. *Id.* at 1087. Here, Plaintiffs allege

14   that all Skins are "put into a large pool, and one winner is chosen at random to take all of the

15   Skins." (Dkt. No. 11 at ¶ 141.) Further, they also allege that they knew they could "cash out the

16   value of the Skins for real money prior to losing them." (*Id.* at ¶¶ 28–79). Taken together, it is

17   clear that each time Plaintiffs played they received an opportunity to win and received a benefit

18   of their bargain. Therefore, like *Chaset*, there is no injury sufficient for RICO standing.

19           In sum, the Court concludes that Plaintiffs have failed to allege concrete injury for RICO

20   standing. "When a proposed amendment would be futile, there is no need to prolong the

21   litigation by permitting further amendment." *Chaset*, 300 F.3d at 1088 (affirming trial court's

22   denial of leave to amend where plaintiffs could not cure a basic flaw—inability to demonstrate

23   standing—in their pleading). Therefore, Plaintiffs' RICO claim is DISMISSED WITH

24   PREJUDICE for failure to state a claim.

25           **C.**      **Jurisdiction over State Law Claims**

26           Plaintiffs alleged that this Court had federal question subject matter jurisdiction pursuant

ORDER GRANTING DEFENDANTS' MOTION
TO DISMISS
PAGE - 7

1    to 28 U.S.C. § 1331 because of the RICO claim. (Dkt. No. 11 at ¶ 80.) However the RICO claim

2    is dismissed with prejudice. The remainder of Plaintiffs' claims are state law claims that

3    Plaintiffs allege the Court has Class Action Fairness Act (CAFA) or supplemental jurisdiction

4    over. (Dkt. No. 31 at 27–29.) Diversity jurisdiction under 28 U.S.C. § 1332 is unavailable

5    because there is not complete diversity of citizenship between Plaintiffs are Defendants.

6                            1.    CAFA Jurisdiction

7            Plaintiffs allege, in their reply to this motion, that the Class Action Fairness Act (CAFA)

8    provides them with jurisdiction. (Dkt. No. 31 at 27.) CAFA gives federal district courts original

9    jurisdiction when "[(1)] the matter in controversy exceeds the sum or value of $5,000,000,

10   exclusive of interest and costs"; "[(2)] any member of a class of plaintiffs is a citizen of a State

11   different from any defendant;" and (3) there are 100 or more members of the class. 28 U.S.C.

12   §§ 1332 (d)(2), (d)(5)(B). However, Plaintiffs allege in their complaint that their class action is

13   proper under Federal Rule of Civil Procedure 23 (Dkt. No. at ¶ 211), not CAFA, and do not

14   allege any specific monetary damages amount.

15           Generally, the sum claimed by the plaintiff controls if the claim is made in good faith.

16   *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 399 (9th Cir. 2010) (citing *St. Paul Indem. Co.

17   v. Red Cab Co.*, 303 U.S. 283, 289 (1938)). However, the Ninth Circuit uses a "preponderance of

18   the evidence standard when the complaint does not allege a specific amount in controversy." *Id.*

19   at 400. *See Abrego Abrego v. Dow Chemical Co.*, 443 F.3d 676, 685 (9th Cir. 2006) (per curium)

20   (applying the preponderance of evidence standard to CAFA). While CAFA relaxed federal

21   jurisdiction requirements in some respects, it did not alter the traditional rule which places the

22   burden of establishing jurisdiction "on the proponent of federal jurisdiction." *Lewis*, 627 F.3d at

23   399 (quoting *Abrego*, 443 F.3d at 685). Here, Plaintiffs provide no factual support for their

24   claim, only allegations of "common sense," that this matter totals more than $5 million in

25   damages. (Dkt No. 31 at 28.) Plaintiffs' allegations do not meet the preponderance of the

26   evidence standard because they are nothing more than conclusory allegations that because CSGO

is a popular game and Valve made more than $567 million in revenue from CSGO last year, Plaintiffs have over $5 million in damages. Further, CAFA jurisdiction was never alleged in the amended complaint.  Therefore, this Court does not have jurisdiction over the state law claims under CAFA.

2.   Supplemental Jurisdiction

The Court, having dismissed Plaintiffs' RICO cause of action, and finding no CAFA jurisdiction, lacks federal subject matter jurisdiction over these state law claims under 28 U.S.C. § 1331. The Court declines to exercise supplemental jurisdiction over the pendent state claims under 28 U.S.C. § 1367 and the remaining state law claims are therefore DISMISSED WITH PREJUDICE for lack of subject matter jurisdiction.[2]

III.   CONCLUSION

For the foregoing reasons, Defendants CSGO Lotto and Trevor A. Martin's motion to dismiss (Dkt. No. 19) is GRANTED. The first amended complaint (Dkt. No. 11) is DISMISSED WITH PREJUDICE in its entirety. Therefore, Defendant Valve Corporation's motion to compel arbitration (Dkt. No. 21.) is DENIED as moot.

DATED this 4th day of October 2016.

John C Coughenour

John C. Coughenour
UNITED STATES DISTRICT JUDGE

---

[2] Because the Court lacks subject matter jurisdiction, the Court need not address Defendants' lack of personal jurisdiction and failure to state a claim arguments.